## A08A2299. ACTION CONCRETE, INC. v. FOCAL POINT ENGINEERING, INC.
(675 SE2d 303)

PHIPPS, Judge.

Action Concrete, Inc. (Action) brought this suit against Laurel Properties, LLC (Laurel) and Focal Point Engineering, Inc. (Focal). Action's complaint is that it is owed over $100,000 for services and material it provided for a construction project on which Laurel was the developer and Focal was the project engineer. Focal moved for summary judgment on the ground that, although it obtained Action's agreement to provide the services and material for the project, it was acting at all times as Laurel's agent. Action appeals the trial court's award of summary judgment to Focal. Because under the facts present here Action could have believed that it was contracting with Focal in its own independent capacity rather than as an agent for Laurel, we reverse.

> To prevail at summary judgment, [Focal] as the moving party, had the burden to demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the nonmovant's favor, warrant judgment as a matter of law. In reviewing the trial court's grant of summary judgment to [Focal], we must construe the evidence most favorably to [Action], and we must give [Action] the benefit of all reasonable doubts and possible inferences.

And, where, as here, the moving party [Focal] is the defendant, it need only show an absence of evidence to support an essential element of [Action's] case to prevail on summary judgment.[1]

The evidence, construed most favorably to Action, shows that Laurel, the owner and developer of a subdivision known as Laurel Gate Townhomes, hired Focal as the project engineer. Laurel needed a concrete subcontractor to install curbing, and Focal suggested Action. As a result, Jim Davis, an employee of Focal, called Jeff Jinks, an employee of Action, to a meeting at the subdivision on December 18, 2006. The meeting was also attended by Tony Pourhassan, an employee of Laurel.

Jinks testified that at the meeting Davis advised him that Focal wanted to engage Action to perform gutter, curb, and related concrete installation work at the subdivision under Focal's supervision; that he and Davis discussed the total linear feet of concrete curb and gutter work required; that he advised Davis that a price for the job would be faxed to Davis's office; that Davis advised him that Action's contract proposal would be approved if it was within the price range set by Focal and asked if Action could begin work immediately with paperwork to follow; and that he advised Davis that he thought this would be possible. Pourhassan testified, however, without contradiction by Action, that at the December 18 meeting, Action was informed that Laurel was the owner of the project.

Action began work on the project on December 19, the day after the meeting. A week later, on December 26, Action faxed a signed contract proposal to Focal for a total price of $68,435. Focal did not sign the contract, but rather forwarded the proposal to Laurel. Laurel did not sign the contract either. In either January or February 2007, Action sent its first invoice for work performed. The invoice was sent to Focal and incorrectly identified Focal as the owner of the project. As a result, Focal immediately returned the invoice and asked Action to resend it accurately designating Laurel as owner of the project and Focal as engineer. Action did so with that invoice and all subsequent invoices, but continued to send the invoices to Focal.

Elizabeth Martin, president of Action, testified that it was Action's understanding that it was working on the job as Focal's subcontractor. According to Martin, it is not unusual for Action to be retained as a subcontractor by an engineer or other general contractor managing a construction project; that Action had prior, positive

---

[1] *Legacy Investment Group v. Kenn*, 279 Ga. 778, 780 (1) (621 SE2d 453) (2005) (punctuation and footnotes omitted).

work experience with Focal; and that Action agreed to work on the job based on Focal's creditworthiness. Action continued to work on the job through the end of March 2007. In April, it submitted its final invoice in the amount of $100,932.45 due to increased work as a result of change orders placed by Focal. Martin further testified that Action was never advised that Focal was acting solely as Laurel's agent on the project and had not directly engaged Action to perform the work.

The principles controlling this case are succinctly stated in OCGA §§ 10-6-53 and 10-6-85. OCGA § 10-6-53 provides that "if the principal's name is disclosed and the agent professes to act for him, it will be held to be the act of the principal." OCGA § 10-6-85 states, however, that "[a]ll agents, by an express undertaking to that effect, may render themselves individually liable."

As thus recognized in *Chambliss v. Hall*,[2]

an agent who makes a contract without disclosing that he is acting as an agent or without identifying his principal, or an agent who makes a contract with the express or implied understanding with the other party that he is binding himself individually, will become individually liable on the contract.[3]

But as held in *Echols v. Howard*,[4] "[a]n agent who, acting within the scope of his authority, enters into contractual relations for a disclosed principal does not bind himself, in the absence of an express agreement to do so."[5] Conversely, as recognized in *Hodges-Ward Assoc. v. Ecclestone*,[6] "[i]f an agent does not disclose to the other party with whom he is dealing that he is acting on behalf of a principal, the agent is personally liable and responsible."[7]

It does appear without dispute that Action was informed, both at the parties' initial meeting and upon sending its first invoice for work performed, that Laurel was the project owner and that Focal was only the project engineer. But the evidence, construed most favorably to Action, would authorize a jury to find that Focal obtained Action's agreement to provide services and material to the construction project without disclosing that Action was dealing with Focal, not directly, but only as an agent of Laurel. A jury could find

[2] 113 Ga. App. 96 (147 SE2d 334) (1966).
[3] Id. at 99 (2).
[4] 17 Ga. App. 49 (86 SE 91) (1915).
[5] Id. at 51 (citation and punctuation omitted).
[6] 156 Ga. App. 59 (273 SE2d 872) (1980).
[7] Id. at 63 (4) (citation omitted).

that Action reasonably understood that Focal was binding itself as well as Laurel. Under these circumstances, Focal was not entitled to summary judgment.

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 11, 2009.

*James W. McKenzie, Jr.*, for appellant.

*Gibson, Deal & Fletcher, John W. Gibson, Michael R. Dunham*, for appellee.