## A11A1344. VILLANUEVA et al. v. FIRST AMERICAN TITLE INSURANCE COMPANY.

(721 SE2d 150)

McFADDEN, Judge.

Derick Villanueva and The Villanueva Law Firm, LLC (formerly known as Moss & Villanueva, LLC) appeal the denial of their motion for summary judgment and the grant of partial summary judgment to First American Title Insurance Company in this action stemming from a real estate closing. Because Villanueva was not a party to the contract upon which First American bases its claim, we reverse the grant of summary judgment to First American on its breach of contract claim and hold that Villanueva is entitled to summary judgment on that claim. As a matter of first impression, we hold that legal malpractice claims are not per se unassignable and Homecomings Financial assigned its claim to First American. Consequently First American may proceed in its own name, and we reject Villanueva's contention that the case should be dismissed on the basis that it cannot. We also hold that whether an intervening criminal act insulates Villanueva from liability turns on foreseeability and is therefore a jury question. We therefore affirm the denial of Villanueva's motion for summary judgment on the legal malpractice claim.

Summary judgment is appropriate when the evidence, viewed favorably to the nonmoving party, shows that no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. See OCGA § 9-11-56 (c). Many of the underlying facts in this case are undisputed. Villanueva is a 2000 graduate of Emory University and a 2003 graduate of Syracuse Law School, and he is a member of the Georgia Bar. In January 2007, he began working as an associate attorney in George Moss's law firm, The Moss Firm/Lenox Title. The firm had been organized in 2005 as The Moss Firm, LLC.

Within months, Villanueva became uncomfortable with the firm's operations, particularly Moss's connection with a nonlawyer, Neal Allen, and the fact that Allen had access to the escrow account the firm used, an account in the name of Lenox Title, LLC. Villanueva knew that lawyers should not allow nonattorneys access to the escrow account. In fact, only Allen and Margaret Moss, George Moss's wife, were signatories on that account; neither was an attorney. George Moss was not a signatory on the account. Villanueva also believed Moss displayed signs of senility.

In spite of his misgivings, Villanueva opened a new firm with Moss, Moss & Villanueva, in April 2007. Villanueva and Moss agreed that Villanueva would use Moss's office because Villanueva did not have enough money to start his own firm. Villanueva never had access to the Lenox Title trust account used by the Moss Firm, but he did have access to a Moss & Villanueva escrow account once it had

been established.

On May 18, 2007, Villanueva acted as the closing attorney for Natasha Merritt's refinance of her mortgage. Homecomings Financial, LLC was the lender in the refinance transaction. Merritt's property was subject to two earlier mortgages totaling close to $1.2 million. Homecomings prepared closing instructions directed to "Moss Law Firm" that required the closing attorneys to pay off the earlier mortgages. Homecomings made clear that its loan was to be recorded in first lien position. Villanueva signed the closing instructions as the settlement agent.

A document called a disbursement authorization form prepared by Homecomings listed the settlement agent as "Moss Law Firm," while the various HUD-1 settlement statements listed the settlement agent as "Lenox Title, LLC." The HUD-1 settlement statements also listed various disbursements to "Moss & Villanueva LLC/Lenox Title," including attorney fees, document preparation fees, post closing fees, and fees for a title examination and tax report. Villanueva signed the settlement statements.

Villanueva instructed Homecomings to send the refinance funds to the Lenox Title escrow account, in spite of his misgivings about Allen's access to that account. The Moss & Villanueva escrow account had not yet been established, although the firm had been. Homecomings wired the funds into the Lenox Title account. After the closing, Villanueva forwarded the closing documents to Homecomings along with a cover letter on Moss & Villanueva letterhead.

After the closing, in accordance with their usual practice, Villanueva gave the paperwork to George Moss and asked him to pay off Merritt's earlier mortgages. But the mortgages were not paid off. In an apparent attempt to hide the problem, Allen made some payments on Merritt's mortgages. He closed the Lenox Title account on August 3, 2007, withdrawing more than $500,000. At the time, close to $800,000 was still owed on Merritt's first mortgages. Moss died on March 21, 2008.

First American had issued title insurance for the refinance transaction, insuring Homecomings. In its closing protection letter to Homecomings, First American agreed to reimburse Homecomings for actual loss it incurred in connection with the closing conducted by The Moss Firm when the loss arose out of the failure of the "Approved Closer" to comply with the written closing instructions. The letter provided that if First American reimbursed Homecomings in accordance with these terms, it would be "subrogated to all rights and remedies [Homecomings] would have had against any person or property. . . ." First American, as the title insurer, paid off the loans.

First American filed this lawsuit against Moss's estate, Villanueva, the Villanueva Law Firm, LLC f/k/a Moss & Villanueva, LLC

(together, "Villanueva"), Lenox Title, Allen, and others. It alleged that the attorney defendants committed malpractice and breached an agreement with Homecomings, to which First American was subrogated, by failing to pay off Merritt's first mortgages.

Villanueva moved for complete summary judgment, and First American moved for partial summary judgment against Villanueva. It sought summary judgment on its breach of contract claim as well as one of Villanueva's defenses.

The trial court granted First American's motion and denied Villanueva's without specifying the basis of its decision. It also decided that First American is the proper party in interest and therefore denied as moot First American's motion to add or substitute Homecomings as plaintiff. Villanueva filed this appeal.

1. Villanueva argues that he is entitled to summary judgment on the breach of contract claim, because he was not a party to the contract upon which First American bases its claim. The closing instructions, the document that forms the basis of the contract, is between Moss Law Firm and Homecomings; Villanueva signed as "settlement agent." OCGA § 10-6-53 provides that "if the principal's name is disclosed and the agent professes to act for him, it will be held to be the act of the principal." Consequently, the closing instructions form a contract between Homecomings and Moss Law Firm. "[A]n agent who, acting within the scope of his authority, enters into contractual relations for a disclosed principal does not bind himself, in the absence of an express agreement to do so." (Citation and punctuation omitted.) *Action Concrete v. Focal Point Engineering*, 296 Ga. App. 567, 569 (675 SE2d 303) (2009).

First American cites *First Bank &c. Co. v. Zagoria*, 250 Ga. 844 (302 SE2d 674) (1983), in support of its argument that Villanueva cannot escape liability by contending that the law firm, not he individually, represented Homecomings. In *Zagoria*, the Supreme Court held that two shareholders of a professional corporation engaged in the practice of law were jointly and severally liable to a client for the failure of one of the shareholders to remit monies owed to the client. But *Zagoria* was overruled by *Henderson v. HSI Financial Svcs.*, 266 Ga. 844 (471 SE2d 885) (1996). In *Henderson*, the Supreme Court held that "shareholders of professional corporations are not personally liable for corporate debts except by personal conduct." *Henderson*, 266 Ga. at 844. The undisputed evidence is that Villanueva was an employee of the Moss Law Firm, not a shareholder, so *Zagoria* is factually distinguishable in any event.

First American assumes that the contract consists of not only the closing instructions but also the HUD-1 settlement statements. Other jurisdictions have questioned or rejected the contention that HUD-1 settlement statements are contracts instead of itemized

directions for disbursing funds. See, e.g., *Cornelius v. Fidelity Nat. Title Co.*, 2009 U.S. Dist. LEXIS 22674 (W.D. Wash. 2009); *Koschene v. Hutchinson*, 73 Va. Cir. 103, 105 (Va. Cir. Ct. 2007). We are not required to decide the issue here because even assuming that the HUD-1 settlement statements were part of the contract, the statements listed Lenox Title, LLC, not Villanueva, as the settlement agent.

The identity of the parties is an essential term of the contract and must be certain. *Peace v. Dominy Holdings*, 251 Ga. App. 654, 655-656 (1) (554 SE2d 314) (2001). The evidence shows no meeting of the minds identifying Villanueva as a party to the contract. Therefore, no enforceable contract existed between Homecomings and Villanueva, and the trial court erred in granting First American summary judgment and denying Villanueva summary judgment on the breach of contract claim. *Gill v. B & R Intl.*, 234 Ga. App. 528, 530-531 (1) (b) (507 SE2d 477) (1998).

2. Villanueva contends that he is entitled to summary judgment on the malpractice claim because legal malpractice claims are not assignable. We agree with Villanueva that the case involves an assignment, but reject his argument that legal malpractice claims are never assignable.

Although the language in the closing protection letter from First American to Homecomings purported to create a right of subrogation, we conclude that, in fact, it created an assignment. The letter provided that if First American reimbursed Homecomings for a loss, First American would be "subrogated to all rights and remedies [Homecomings] would have had against any person or property. . . ." This language authorizes First American to bring an action directly against any person; it does not merely require Homecomings to reimburse First American out of any recovery Homecomings might obtain from the third party. Further, it indicates that upon payment, First American has the rights that Homecomings otherwise "would have had," indicating that Homecomings no longer has them. Because this language transfers to First American "not merely the insured's rights of recovery but also [its] right of action," it amounts to an assignment. (Punctuation omitted.) *Shook v. Pilot Life Ins. Co.*, 188 Ga. App. 714, 715 (1) (373 SE2d 813) (1988). See also *Liberty Mut. Ins. Co. v. Clark*, 165 Ga. App. 31, 32 (2) (299 SE2d 76) (1983); *Harrell v. Carlton*, 141 Ga. App. 41 (232 SE2d 384) (1977) (provision that "subrogate[d] said [insurance] company to all of the rights, claims and interest which the undersigned [insured] may have against any party, person . . . and authorizes the said Company to sue, compromise or settle in the undersigned's name or otherwise" was an assignment, in spite of subrogation language). Compare *Allstate Ins. Co. v. Welch*, 259 Ga. App. 71, 72 (1) (576 SE2d 57)

(2003) (the subrogation "rights of recovery" language in a policy did not entitle the insurer to succeed to the insured's right of action).

Whether legal malpractice claims are assignable is an issue of first impression in Georgia. See *Frates v. Sutherland, Asbill & Brennan*, 164 Ga. App. 243, 244-245 (1) (296 SE2d 788) (1982) (declining to decide the assignability issue when summary judgment could be affirmed on other grounds). In general, under Georgia law, a right of action is assignable "if it involves, directly or indirectly, a right of property," while "[a] right of action for personal torts or for injuries arising from fraud to the assignor may not be assigned." OCGA § 44-12-24. "Personal torts" are torts involving an injury to the person, to the reputation, or to feelings, as distinguished from an injury or damage to real or personal property, which is a property tort. *Hubbard v. Ruff*, 97 Ga. App. 251, 253 (103 SE2d 134) (1958). OCGA § 44-12-24 "codifies the common law prohibition against assignment of personal injury claims." (Citation omitted.) *Govt. Employees Ins. Co. v. Hirsh*, 211 Ga. App. 374 (439 SE2d 59) (1993).

Legal malpractice claims often involve injury to property in the form of financial loss, rather than personal injury, and therefore may be assignable under OCGA § 44-12-24. And here, the alleged legal malpractice is not based on fraud and does not involve an injury to the person, to the reputation, or to feelings. See *Hubbard v. Ruff*, 97 Ga. App. at 253. Instead, the loss is solely a financial loss, it involves a right of property, and, under the facts of this case, it is assignable. "A party may assign a cause of action involving a tortious injury to his property." (Citation omitted.) *Southern Gen. Ins. Co. v. Ross*, 227 Ga. App. 191, 196 (7) (489 SE2d 53) (1997).

Citing cases from other jurisdictions, Villanueva urges us to hold that Georgia public policy prohibits the assignment of legal malpractice claims. We observe that since its enactment in 1895, the legislature has never amended OCGA § 44-12-24 to exclude legal malpractice claims from assignability. Consequently, we decline to hold that allowing the assignment of legal malpractice claims necessarily violates public policy. See *Driebe v. Cox*, 203 Ga. App. 8, 9 (1) (416 SE2d 314) (1992) ("[T]he trend in Georgia has been to relax the rule of strict contractual privity in malpractice actions, recognizing that under certain circumstances, professionals owe a duty of reasonable care to parties who are not their clients."). "In fact, where the language of an [a]ct is plain and unequivocal, judicial construction is not only unnecessary but is forbidden." (Citation and punctuation omitted.) *Dixie Constr. Products v. Southeastern Council &c. Ins.*, 183 Ga. App. 101, 102 (357 SE2d 831) (1987). Villanueva proposes no rule of statutory construction under which his exception can be engrafted upon the plain language of the statute. "Further, [his] invitation to this court to create that exception judicially must

be declined as such matters are better addressed to the Legislature." *Ga. Farm &c. Ins. Co. v. Jah*, 193 Ga. App. 169, 171 (387 SE2d 447) (1989).

In sum, we hold only that there is no per se bar to the assignment of legal malpractice claims; we pretermit whether there may be cases where the special nature of the attorney-client relationship precludes assignment. Here, the trial court did not err in denying Villanueva summary judgment on this ground.

3. Villanueva argues that he was entitled to summary judgment on the ground that First American could not pursue the action in its name because Homecomings is the real party in interest. A court may not grant summary judgment on the basis of a real-party-in-interest objection because such an objection is a matter in abatement and does not go to the merits of the action. *Warshaw Properties v. Lackey*, 170 Ga. App. 101-102 (316 SE2d 482) (1984). Further, the trial court did not err in concluding that First American is the real party in interest because the assignment of the malpractice claim vested title in First American, allowing it to sue directly. *Nationwide Mut. Ins. Co. v. Kershaw Mfg. Co.*, 198 Ga. App. 153, 154 (1) (401 SE2d 23) (1990).

4. Villanueva argues that Allen's theft of funds from the escrow account was an intervening criminal act that insulates him from liability. Under Georgia law,

> an unforeseeable independent, intervening criminal act of a third person which produced the injury complained of, and without which act the injury would not have occurred, is treated as the proximate cause of the injury, and the independent, intervening criminal act of the third person shall insulate and exclude any negligence on the part of the defendant.

(Citations omitted.) *Simmons v. Dept. of Human Resources*, 213 Ga. App. 98, 98-99 (1) (443 SE2d 654) (1994). Thus, the issue is whether Allen's criminal acts were foreseeable. "Proximate cause is properly reserved for the jury and can only be appropriately addressed on summary judgment in plain and indisputable cases." (Citation and punctuation omitted.) *Schernekau v. McNabb*, 220 Ga. App. 772, 773 (470 SE2d 296) (1996). A party is entitled to summary judgment on the issue of proximate cause "only if reasonable persons could not differ as to both the relevant facts and the evaluative application of legal standards (such as the legal concept of 'foreseeability') to the facts." (Punctuation omitted.) Id.

Given the evidence that Villanueva had concerns about Allen having access to the escrow account to which he directed Homecom-

ings to wire funds, this is not a plain and indisputable case. The trial court, therefore, did not err in denying Villanueva's motion for summary judgment on this ground.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Phipps, P. J., concurs in the judgment only. Andrews, J., concurs in Divisions 1, 2 and 3 and in the judgment.*

DECIDED DECEMBER 1, 2011 ▮

*Derick C. Villanueva*, pro se.

*Beloin, Brown, Blum & Wise, Frederic S. Beloin, Charles W. Brown*, for appellee.