S12G0484. VILLANUEVA et al. v. FIRST AMERICAN TITLE INSURANCE COMPANY.
(740 SE2d 108)

BENHAM, Justice.

We granted the petition for a writ of certiorari filed by appellants Derick Villanueva and The Villanueva Law Firm, LLC following the decision of the Court of Appeals in *Villanueva v. First American Title Ins. Co.*, 313 Ga. App. 164 (721 SE2d 150) (2011). In granting the petition, we expressed interest in the Court of Appeals's holding in Division 2 of its opinion that legal malpractice claims are not per se unassignable. After studying the issue, we agree with the Court of Appeals that legal malpractice claims are not per se unassignable.

In May 2007, appellant Villanueva acted as the closing attorney for a mortgage-refinance transaction in which Homecomings Financial, LLC served as the lender supplying funds to pay off earlier mortgages on the secured property. Appellee First American Title Insurance Company issued title insurance on the transaction. Pursuant to Villanueva's instructions, Homecomings wired funds into a

specified escrow account. However, the funds were not used to pay off the earlier mortgages; instead, the funds were withdrawn and the account closed by a person not a lawyer. First American paid off the earlier mortgages and, pursuant to its closing protection letter to Homecomings, became "subrogated to all rights and remedies [Homecomings] would have had against any person or property. . . ." First American then filed this lawsuit against appellants, the estate of another attorney, the escrow account, the non-lawyer who withdrew the funds from the escrow account, and others, seeking damages for legal malpractice and breach of a contract with Homecomings. The trial court denied summary judgment to appellants.

The Court of Appeals affirmed the trial court's denial of summary judgment to appellants on the claim of legal malpractice, agreeing with Villanueva that First American's subrogation was an assignment since the protection letter transferred to First American Homecomings's right of action in addition to its rights of recovery (313 Ga. App. at 167), but disagreeing with Villanueva's assertion that a legal malpractice claim is never assignable. Recognizing that OCGA § 44-12-24[1] states that a right of action is assignable if it involves a property right but not when it is for personal torts or for injuries arising from fraud, the Court of Appeals concluded that a legal malpractice claim may be assignable under OCGA § 44-12-24 when it involves injury to property in the form of financial loss and is not based on fraud or does not involve a personal tort. The Court of Appeals pretermitted deciding whether there are cases where the special nature of the attorney-client relationship precludes assignment of a legal malpractice claim. 313 Ga. App. at 169.[2]

The common law recognizes assignment of property damage claims but not personal injury claims, and OCGA § 44-12-24 codifies these principles. *Carter v. Banks*, 254 Ga. 550 (1) (330 SE2d 866) (1985). Georgia law also authorizes the assignment of all choses in action arising upon contract, except as otherwise provided in Title 11 (claims under the Uniform Commercial Code). OCGA § 44-12-22. Generally, a legal malpractice action is based upon the breach of a duty imposed by the contract of employment between the attorney

---

[1] OCGA § 44-12-24 provides that "[e]xcept for those situations governed by Code Sections 11-2-210 and 11-9-406, a right of action is assignable if it involves, directly or indirectly, a right of property. A right of action for personal torts or for injuries arising from fraud to the assignor may not be assigned."

[2] The Court of Appeals ruled that appellants were entitled to summary judgment on the claim for breach of contract since Villanueva was not a party to the contract with Homecomings on which First American sued. Id., 313 Ga. App. at 166-167.

and the client, and sounds in contract when it alleges negligence or unskillfulness (*Jones, Day, Reavis & Pogue v. American Envirecycle*, 217 Ga. App. 80 (1) (456 SE2d 264) (1995)), and thus may qualify as an assignable chose in action under OCGA § 44-12-22. A claim of legal malpractice may, on occasion, sound in tort (see *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 167 Ga. App. 411 (1) (306 SE2d 340) (1983), aff'd, 252 Ga. 149 (311 SE2d 818) (1984)), but under OCGA § 44-12-24, the unassignable claims for legal malpractice are only those that seek recompense for "personal torts." In *Robeson v. Intl. Indemnity Co.*, 248 Ga. 306 (1) (282 SE2d 896) (1981), this Court held that interspousal immunity prevented a person from recovering from that person's spouse for "personal torts," and described said torts as "tortious injury to [the] person." Quoting Black's Law Dictionary, the Court of Appeals construed "personal tort" as used in the interspousal immunity statute as " 'one involving or consisting in an injury to the person or to the reputation or feelings, as distinguished from an injury or damage to real or personal property. . . .' " *Hubbard v. Ruff*, 97 Ga. App. 251, 253 (103 SE2d 134) (1958). In *Hutcherson v. Durden*, 113 Ga. 987, 989-990 (39 SE 495) (1901), this Court determined that "injuries done to the person" included "all actionable injuries to the individual himself," citing physical and bodily injury, injury to the reputation, false imprisonment, malicious arrest, and injury to one's health, in contrast to injury done to the person's property. In light of OCGA §§ 44-12-22 and 44-12-24 and the dichotomy presented by possible legal malpractice claims, we agree with the Court of Appeals that the assignment of legal malpractice claims is not prohibited as a matter of law.

Appellants assert that the assignment of a legal malpractice claim violates Georgia's public policy. The legislative enactment of a statute is a conclusive expression of public policy (*Integon Indemnity Corp. v. Canal Ins. Co.*, 256 Ga. 692, 693 (353 SE2d 186) (1987)), and the Georgia legislature, by its enactment of OCGA §§ 44-12-22 and 44-12-24, has deemed the assignment of a chose in action arising out of contract or involving a right of property to be within the public policy of Georgia, prohibiting only the assignment of a right of action for personal torts or for injuries arising from fraud. See OCGA § 44-12-44. Nonetheless, appellants point to the fact that a majority of states ban the assignment of legal malpractice claims as void as against public policy. The judicial decisions reaching such a conclusion generally find the assignment to be one for personal injury and/or cite the need to preserve the sanctity of the unique and personal relationship between attorney and client; the incompatibility of assignment and an attorney's duty of loyalty and confidential-

ity; the need to avoid encouragement of the commercialization of legal malpractice claims that could promote champerty and debase the legal profession; and the concern that allowing assignment of such claims would cause attorneys to be hesitant to represent insolvent, underinsured, or judgment-proof defendants for fear that a malpractice claim would be used as tender. See *Goodley v. Wank & Wank, Inc.*, 62 Cal.App.3d 389, 395-396 (133 Cal.Rptr. 83) (1976), the seminal case on the propriety of the assignability of legal malpractice claims. See also *City of Garland v. Booth*, 971 SW2d 631 (Tex. App. 1998). In barring assignment of legal malpractice actions, several courts also have cited the "public and disreputable role reversal" that follows the assignment of a legal malpractice claim to the adverse party in the underlying litigation (*Picadilly, Inc. v. Raikos*, 582 NE2d 338, 344-345 (Ind. 1991) abrogated on other grounds in *Liggett v. Young*, 877 NE2d 178 (Ind. 2007); *Zuniga v. Groce, Locke & Hebdon*, 878 SW2d 313, 318 (Tex. App. 1994)), as well as the opportunity and incentive for collusion when a legal malpractice claim is assigned to the adverse party in the underlying litigation. See *Wagener v. McDonald*, 509 NW2d 188, 191 (Minn. App. 1993).

The Court of Appeals's decision in the case before us falls within the minority of courts that have declined to adopt an absolute prohibition on the assignment of claims for legal malpractice. The cases from the jurisdictions in the minority generally determine that the legal malpractice action alleges a pecuniary injury similar to a property injury and does not present the concerns raised by the courts that ban the assignment of legal malpractice claims, or suggest that those concerns are overstated. The Supreme Court of Pennsylvania saw a claim for damages based upon legal malpractice arising out of negligence and breach of contract and alleging purely pecuniary injury as akin to property rights that can be assigned, rather than unassignable personal injury rights, and ruled that public policy did not preclude a client from assigning a legal malpractice claim. *Hedlund Mfg. Co. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 526 (539 A2d 357) (1988). The court stated "[w]e will not allow the concept of the attorney-client relationship to be used as a shield by an attorney to protect him or her from the consequences of legal malpractice. Where the attorney has caused harm to his or her client, there is no relationship that remains to be protected." Id. See also *Frank v. Tewinkle*, 2012 Pa. Super. 104 (45 A3d 434) (2012) (champertous assignment of legal malpractice claim is invalid). In *Thurston v. Continental Cas. Co.*, 567 A2d 922, 923 (Me. 1989), the Supreme Court of Maine pointed out that a legal malpractice claim was one for economic harm rather than personal injury and that its assignment

to the plaintiff in settlement of a products liability action did not establish a general market for such claims since the plaintiff/assignee had "an intimate connection with the underlying lawsuit." The Maine court stated that "[t]he argument that legal services are personal and involve confidential attorney-client relationships does not justify preventing a client . . . from realizing the value of its malpractice claim in . . . its assignment to someone else with a clear interest in the claim. . . ." The Court of Appeals of Oregon described as "overstated" the public policy concerns voiced by adherents of an absolute ban on the assignment of legal malpractice claims, noting, among other things, that the threat to attorney-client confidentiality posed by the assignment of a legal malpractice claim is diminished when the assignment is voluntary inasmuch as the client presumably decided to waive the privilege upon agreeing to the assignment. *Gregory v. Lovlien,* 174 Or. App. 483, 491, n. 6 (26 P3d 180) (2001). The Oregon court concluded that "not 'every voluntary assignment of a legal malpractice claim should be barred as a matter of law.' [Cit.]" Id., 174 Or. App. at 492. Confronted with a legal malpractice claim brought by a plaintiff to whom the claim had been assigned in settlement of the underlying personal injury action, the Supreme Judicial Court of Massachusetts was "not persuaded that every voluntary assignment of a legal malpractice claim should be barred as a matter of law" since most claims in Massachusetts are assignable, legal malpractice claims are not purely contractual or tortious in nature, the legal malpractice claim had been pled as one for economic loss, and no clear rule of law or professional responsibility, or a matter of public policy required the assignment not to be enforced. *New Hampshire Ins. Co. v. McCann,* 429 Mass. 202, 209 (707 NE2d 332) (1999). In *Gurski v. Rosenblum and Filan, LLC,* 276 Conn. 257, 273 (885 A2d 163) (2005), the Supreme Court of Connecticut examined the considerations raised by the appellate decisions that prohibit the assignment of legal malpractice claims and declared itself "not persuaded that every voluntary assignment of a legal malpractice action should be barred as a matter of law." The court did conclude, however, "that public policy considerations warrant the barring of an assignment of a legal malpractice action to an adversary in the underlying litigation" because "such assignments 'feature a public and disreputable role reversal' and 'magnify the least attractive aspects of the legal system,' such that jurors in the legal malpractice action . . . 'would rightly leave the courtroom with less regard for the law and the legal profession than they had when they entered.' [Cit.]" Id., 276 Conn. at 279-280. The rationale of the cases from the minority of jurisdictions that do not recognize a complete ban on the

assignment of legal malpractice claims reinforces our decision that we cannot ban the assignment of legal malpractice actions.[3]

Appellants suggest that this Court, having the inherent power to govern the practice of law in Georgia, is authorized to and should carve out an exception to the statutes regarding the assignability of legal malpractice claims. "[T]he courts have an inherent power to regulate the conduct of attorneys as officers of the court, and to control and supervise the practice of law generally, whether in or out of court . . . ." *Wallace v. Wallace*, 225 Ga. 102, 109 (166 SE2d 718) (1969). The facts of this case, however, do not require the exercise of our inherent power. The legal malpractice allegation — that the attorney failed to pay the outstanding loans in full — alleges a purely pecuniary injury and does not allege a "personal tort," making it assignable under OCGA §§ 44-12-22 and 44-12-24, and the act of assignment raises neither an issue of professional responsibility nor an issue of illegality. Since we are not presented with facts that call into question the regulation of the conduct of attorneys or the control and supervision of the practice of law, we decline to posit and answer hypothetical questions.

The decision of the Court of Appeals that legal malpractice claims are not per se unassignable is affirmed.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 18, 2013.

*Wood & Meredith, Hugh C. Wood*, for appellants.

*Beloin, Brown, Blum & Wise, Fredric S. Beloin, Charles W. Brown*, for appellee.

*McKenna, Long & Aldridge, James R. Evans, Oliver Maner, Patrick T. O'Connor, Robert B. Lingle, Chambers, Aholt & Rickard, Kenneth L. Shigley, Robin F. Clark, Paula J. Frederick, State Bar of Georgia*, amici curiae.

---

[3] Our citation to these cases from other jurisdictions should not be taken as an expression of support for any position taken in the cases other than that which is common to all — that legal malpractice actions are not per se unassignable.