### S15Q1445. PNC BANK, NATIONAL ASSOCIATION v. SMITH et al.

(785 SE2d 505)

MELTON, Justice.

In this case regarding the requirements of Georgia's foreclosure confirmation statute, OCGA § 44-14-161,[1] the United States District Court for the Northern District of Georgia has certified two questions: (1) Is a lender's compliance with the requirements contained in OCGA § 44-14-161 a condition precedent to the lender's ability to pursue a borrower and/or guarantor for a deficiency after a foreclosure has been conducted? (2) If so, can borrowers or guarantors waive the condition precedent requirement of such statute by virtue of waiver clauses in the loan documents? For the reasons set forth below, with regard to guarantors, we answer both questions affirmatively.[2]

1. In relevant part, the record shows that PNC Bank, National Association holds a promissory note on certain commercial property in Jackson County, Georgia. The note is related to an original loan dated May 6, 2004, and a deed to secure debt and security agreement encumbering the property. The borrower of the loan is Hoschton Towne Center, LLC, which is not a party to the current action. Kenneth D. Smith, William R. Dooley, Terry W. Dooley, Robert McNaughton, Chris Dooley, Timothy R. Sterritt, and New South Vision Properties, LLC guaranteed the original loan and its subsequent modifications.[3] The deed to secure debt gives PNC the right to exercise the power of sale in case of default, and PNC may also pursue other collateral, including "contracts of guaranty." Finally, the deed to

---

[1] This statute provides:

> When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

OCGA § 44-14-161 (a).

[2] The parties concede and the record confirms that there are no borrowers involved in the present lawsuit, only guarantors. Therefore, we do not reach the issue of a borrower's rights in the present matter, as it would result in an advisory opinion. We note, however, that the parties agree that a confirmation is necessary to pursue a deficiency judgment against a borrower.

[3] From 2005 to 2008, four modifications were made to the original loan, primarily consisting of changes to the principal amount due on the loan as well as the maturity dates of the note.

secure debt grants PNC the right to exhaust its remedies "either concurrently or independently, and in such order as [PNC] may determine."

In some of the separate guaranties, each of the guarantors pledged to remain unconditionally liable on the indebtedness, irrespective of Hoschton's own liability or ultimate discharge. In addition, the guarantors waived their legal and equitable defenses, other than payment of the indebtedness. The guarantors waived "any and all rights or defenses . . . based on any 'one action' or 'antideficiency' law or any law which prevents [PNC] from bringing any action, including claim for deficiency against [the guarantors], before or after [PNC's] completion of any foreclosure action. . . ." The guarantors also acknowledged PNC's right of foreclosure and agreed to remain liable for the indebtedness even if post-foreclosure confirmation did not occur.[4]

On April 18, 2013, following Hoschton's default, PNC sent Hoschton and all of the guarantors notice of its intent to accelerate the maturity of the note and to declare the entire unpaid principal and interest then due immediately due and payable. On June 28, 2013, PNC conveyed notice of its intent to foreclose, and the property was subsequently disposed of at a foreclosure sale. Ultimately, PNC chose not to obtain confirmation of this sale pursuant to OCGA § 44-14-161. Thereafter, PNC filed the present action against the guarantors for a deficiency, claiming that they have waived any and all defenses to this action which seeks all principal, interest, late charges, and costs arising from the alleged default.

2. The first question we have been asked to answer is whether a lender's compliance with the requirements contained in OCGA § 44-14-161 is a condition precedent to the lender's ability to pursue a guarantor for a deficiency after a foreclosure has been conducted. We find that such compliance is required.

In *First Nat. Bank & Trust Co. v. Kunes*, 230 Ga. 888, 890-891 (199 SE2d 776) (1973), we considered the question of whether two individuals who acted as sureties were entitled to notification prior to foreclosure confirmation proceedings. We summarized:

> We . . . hold that [the sureties] were "debtors" within the meaning of [OCGA § 44-14-161 (c)] immediately upon the default on the promissory notes and as such should have

---

[4] We recite these facts only for purposes of background information. We do not reach the merits of the underlying case; instead, we answer the questions posed to us only in a general sense, not as applied to the specific facts and circumstances of this ongoing litigation in federal court.

received notice of the confirmation proceedings and given an opportunity to contest the approval of the sales before claims for the balance of the indebtedness could be prosecuted against them.

Id. at 889.[5] *Kunes* goes on to state that, even if the sureties in that matter had been only guarantors, "it was necessary that these parties be properly notified of the confirmation proceedings, irrespective of whether these separate undertakings were agreement of surety or guaranty." Id. at 891. We reasoned that notice to both sureties and guarantors was necessary to satisfy the purpose of the confirmation statute — "to limit and abate deficiency judgments in suits and foreclosure proceedings on debts." (Emphasis omitted.) Id. at 890.

Based upon this reasoning, it would not matter for purposes of this statute whether the debtors were primarily or secondarily liable on the debt as they would still have to be notified of the confirmation proceedings to be held accountable for the deficiency, or balance due on the indebtedness.

Id. Our conclusion was also supported by the expansive definition of "debtor" in what is now OCGA § 18-2-1 ("Whenever one person, by contract or by law, is liable and bound to pay to another an amount of money, certain or uncertain, the relation of debtor and creditor exists between them."). PNC's argument that *Kunes* stands only for the proposition that guarantors must receive notice of a confirmation proceeding is untenable. There would be no need to extend notice to guarantors as "debtors" under OCGA § 44-14-161 (c) if they were not entitled to some right as "debtors" under OCGA § 44-14-161 (a). Indeed, in *Kunes*, we pointed out that notice was required to enable sureties and guarantors "an opportunity to contest the approval of the [foreclosure] sales." Id. at 889.

3. The second question we have been asked to answer is whether a guarantor can waive the condition precedent requirement of the confirmation statute by virtue of waiver clauses in the loan documents. Guarantors may waive the condition precedent.[6]

---

[5] OCGA § 44-14-161 (c) provides:
The court shall direct that a notice of the hearing shall be given to the debtor at least five days prior thereto; and at the hearing the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale. The court may order a resale of the property for good cause shown.

[6] We do not view compliance with the condition precedent established by the confirmation statute as a "jurisdictional" requirement for a deficiency action that cannot be waived by the parties to such litigation. "Jurisdiction" is a term often confused and misused, but it is clear that

(a) The Court of Appeals of Georgia has considered this issue on at least two occasions. In *HWA Properties, Inc. v. Community & Southern Bank*, 322 Ga. App. 877, 887 (2) (b) (746 SE2d 609) (2013), the Court of Appeals observed that a "guarantor may consent in advance to a course of conduct which would otherwise result in his discharge, and this includes the waiver of defenses otherwise available to a guarantor." (Citation and punctuation omitted.) The Court of Appeals then analyzed the guaranty at issue in that case, noting that it expressly: (1) waived all defenses to liability on the entire balance due on the note; (2) gave consent for the lender to collect other collateral and apply the proceeds to the amount due on the note; (3) agreed that the collection of other collateral would not reduce, affect, or impair the guarantor's liability; and (4) agreed that the guarantor would remain liable for any deficiency even after foreclosure of the property and release of the borrower. The Court of Appeals then reasoned:

> [G]iven these provisions, we conclude [the lender's] failure to obtain a valid confirmation of the foreclosure sale, pursuant to OCGA § 44-14-161, does not impair its authority to collect the difference between the amount due on the note and the foreclosure sale proceeds from [the guarantor] based upon his personal guaranty. See *Baby Days v. Bank of Adairsville*, 218 Ga. App. [752, 755 (3) (463 SE2d 171) (1995)]. It follows that the trial court did not err in granting summary judgment to [the lender] on its suit against [the

---

confirmation does not determine the subject matter jurisdiction of Georgia courts to decide contract actions to recover under a guarantee. See *Crutchfield v. Lawson*, 294 Ga. 407, 409 (754 SE2d 50) (2014) (" 'Jurisdiction of the subject matter does not mean simply jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which that particular case belongs.' " (citation omitted)). Nor is confirmation in the nature of a jurisdictional requirement, unrelated to the merits of an action, that regulates the initial filing of a case or the movement of a case from the jurisdiction of one court to another. Compare, e.g., *Foster v. Brown*, 253 Ga. 33, 34 (315 SE2d 656) (1984) (involving OCGA § 9-11-41 (d), which requires a plaintiff who has dismissed an action to "first pay the court costs of the action previously dismissed" before commencing an action based on the same claim against the same defendant); *Chambers v. State*, 262 Ga. 200, 201 (415 SE2d 643) (1992) (discussing the transfer of jurisdiction between a trial court and an appellate court through the filing of a notice of appeal and the return of the remittitur).

Instead, the condition precedent to a deficiency action against a borrower or guarantor established by the confirmation statute is in the nature of an element of that sort of contract claim, which if not pled and proved may result in the lender losing the lawsuit but which may normally be waived. The only authority holding that OCGA § 44-14-161 establishes a "jurisdictional" requirement is *Archer Capital Fund, L.P. v. TKW Partners, LLC*, No. 1:08-CV-2747-TWT, 2009 WL 2356072 (N.D. Ga. July 27, 2009), an unpublished federal district court opinion that based its brief analysis of the issue on cases, like *Foster*, dealing with a different sort of statute. *Archer* is not persuasive, much less binding, on this point.

guarantor] as a personal guarantor of the note. Id.; see also *Gen. Motors Acceptance Corp. v. Newton*, 213 Ga. App. 405, 406-407 (444 SE2d 805) (1994) (The failure to confirm a nonjudicial foreclosure sale pursuant to a security deed does not prevent a creditor from seeking to enforce a contractual right to recover against additional security on the debt.); *Worth v. First Nat. Bank*, 175 Ga. App. 297, 297-298 (1) (333 SE2d 173) (1985) (accord).

(Footnote omitted.) *HWA Properties*, supra, 322 Ga. App. 887 (2) (b). The Court of Appeals reached the same result in *Community & Southern Bank v. DCB Investments, LLC*, 328 Ga. App. 605 (760 SE2d 210) (2014). Again, the Court of Appeals found that the guarantor waived any rights under the confirmation statute based on explicit language in the guaranty agreement. In doing so, the Court of Appeals noted that the result is in line with the fundamental principle that the freedom of contract is sacrosanct, and that freedom should not be limited absent some important public policy reason. Id. at 610 (2). We agree. This result creates an appropriate balance between the statutory protections of the confirmation statute and the freedom of a guarantor to enter contracts deemed beneficial. See, e.g., *Redman Industries v. Tower Properties*, 517 FSupp. 144 (N.D. Ga. 1981).

(b) Contrary to the arguments of the guarantors herein, this result does not violate OCGA § 1-3-7. That statute provides that "[l]aws made for the preservation of public order or good morals may not be dispensed with or abrogated by any agreement. However, a person may waive or renounce what the law has established in his favor when he does not thereby injure others or affect the public interest." The confirmation statute's requirements help preserve the public order by ensuring that borrowers are not unduly stripped of their property and left destitute after their assets are subjected to a deficiency action. These principles, however, do not apply in the same manner to guarantors, who are, most often, volunteers to the transaction. As such, guarantors face neither the same disparity of bargaining power nor the same type of risk as borrowers. For this reason, a guarantor's waiver of the requirements of the confirmation statute does not clearly "injure others or affect the public interest." Id.

Furthermore, a review of statutory text reveals the legislature's determination that waiver in these circumstances does not violate public policy. In 1981, the General Assembly added provisions requir-

ing notice of foreclosure sales[7] to the original 1935 confirmation statute that required, among other things, notice to "debtors" — construed by *Kunes* in 1973 to include borrowers and guarantors — of confirmation proceedings. See Ga. L. 1981, p. 834. For the new provisions — Sections 3, 4, 5, and 6 of the amended 1935 Act — the General Assembly, presumably cognizant of *Kunes*, specifically defined "debtor" to exclude guarantors.[8] "For purposes of Sections 4, 5, and 6 of the Act," Section 3 said, the meaning of "debtor" was limited to the original borrower and the current owner of the property — "the grantor of the mortgage, security deed, or other lien contract," or "[i]n the event the property encumbered . . . has been transferred or conveyed by the original debtor, . . . the current owner of the property encumbered by the debt . . . ."

At that time, the General Assembly also considered whether the protections of the 1935 Act should be waivable. The legislature decided in Section 5 (b) that "[n]o waiver or release of the notice requirements of this Act shall be valid when made in or contemporaneously with the security instrument containing the power of nonjudicial foreclosure sale" — notice requirements plural, meaning Section 1's required notice of the confirmation proceeding as well as Section 4's required notice of the foreclosure sale. (That reference was being made in Section 5 (b) to all of the notice requirements in the Act is made clearer by Section 5 (a), which refers specifically to "[t]he requirement of Section 4 of this Act.")[9] This no-waiver protection appears in Section 5, as to which Section 3 says protected "debtors" are limited to original borrowers and current owners, not guarantors.

Thus, in 1981 the General Assembly made the express policy decision to prohibit waivers of the confirmation proceeding protections only for borrowers (and their successors), not guarantors. See *Villanueva v. First American Title Ins. Co.*, 292 Ga. 630, 632 (740

---

[7] Current OCGA § 44-14-162.2 requires that a debtor must be given 30 days' notice prior to a non-judicial foreclosure sale.

[8] "Debtor" is expressly defined as

the grantor of the mortgage, security deed, or other lien contract. In the event the property encumbered by the mortgage, security deed, or lien contract has been transferred or conveyed by the original debtor, the term "debtor" shall mean the current owner of the property encumbered by the debt, if the identity of such owner has been made known to and acknowledged by the secured creditor prior to the time the secured creditor is required to give notice pursuant to Code Section 44-14-162.2.

OCGA § 44-14-162.1.

[9] Ultimately, the codifiers made Sections 1 and 2 of the 1935 Act into OCGA §§ 44-14-161 and 44-14-162, and Sections 3 to 6 into OCGA §§ 44-14-162.1 to 44-14-162.4 — and in so doing, limited the "notice requirements of this Act" language of Section 5 (b) to say in OCGA § 44-14-162.3 "the notice requirement [singular] of Code Section 44-14-162.2."

SE2d 108) (2013) ("The legislative enactment of a statute is a conclusive expression of public policy. . . .").

Therefore, for all of the reasons set forth above, we find that a lender's compliance with the requirements contained in OCGA § 44-14-161 is a condition precedent to the lender's ability to pursue a guarantor for a deficiency after a foreclosure has been conducted, but a guarantor retains the contractual ability to waive the condition precedent requirement.

*Certified questions answered. All the Justices concur.*

NAHMIAS, Justice, concurring.

I join the Court's opinion in full, as it properly applies current Georgia law in answering the two questions presented. But I write to express concern about an issue lurking in today's decision.

As the Court explains, our opinion in *First Nat. Bank & Trust Co. v. Kunes*, 230 Ga. 888 (199 SE2d 776) (1973), equated guarantors of loans secured by real estate with borrowers and their sureties under Georgia's 1935 foreclosure confirmation statute, which is now codified as OCGA §§ 44-14-161 and 44-14-162. That holding was a reasonable interpretation of the 1935 act, and in any event it is a four-decade-old statutory precedent that created a workable rule involving contract and property rights, and thus it should be followed as a matter of stare decisis. See *Woodard v. State*, 296 Ga. 803, 812 (771 SE2d 362) (2015) (discussing factors to consider in deciding whether to apply stare decisis); *Savage v. State*, 297 Ga. 627, 641 (774 SE2d 624) (2015) (explaining that "stare decisis is especially important where judicial decisions create substantial reliance interests, as is most common with rulings involving contract and property rights"). Indeed, the detailed waiver provisions included in the guarantees suggest that the parties here, including PNC Bank, understood the law to require confirmation before deficiency actions against guarantors: there would be no need to so explicitly waive a defense that one believes does not exist.

I also agree with the Court's conclusion that, under current law, a guarantor may, through clear and explicit contractual language, waive the confirmation protection afforded by OCGA § 44-14-161. The confirmation provision does not affect the jurisdiction of a court to decide a deficiency action. And as the Court explains, in making amendments to the confirmation statute in 1981, the General Assembly directly addressed this waiver issue and determined, as the public policy of Georgia, that while lenders may not extract waivers of confirmation rights from borrowers (or their successor property owners), this protection from waivers does not extend to guarantors.

As alluded to in footnote 9 of the Court's opinion, there is a significant question whether, in reorganizing the 1935 act as amended in 1981 into the Official Code of Georgia that took effect in 1982, the protection that borrowers had against waivers of the confirmation proceeding notice requirement was properly eliminated. The face of the Code indicates that this protection no longer exists, but the codifiers were not supposed to be making any substantive revisions to the prior law. See OCGA § 1-1-2; *Brophy v. McCranie*, 264 Ga. 187, 188-189 (442 SE2d 230) (1994). There is no textual argument, however, that the General Assembly has ever *extended* the no-waiver protection to encompass *guarantors*. That is enough to resolve the waiver question presented in this case.

Nevertheless, the potential conflict between the statutes enacted by the General Assembly and the Official Code of Georgia Annotated is important to note. If one relies only on the face of the Code as compiled, then given *Kunes*'s equation of guarantors and borrowers, if guarantors can waive the protections of the confirmation statute, it would seem to follow that borrowers too can waive those protections. And if that is the case, then it may well be — given the imbalance in bargaining power between lenders and many borrowers — that before long, virtually every security deed in Georgia, particularly for residential home buyers, will include such a waiver, and the confirmation requirement of OCGA § 44-14-161 could become a dead letter for those whom it was most clearly designed to protect. Perhaps the Code does not accurately reflect the law, for the reasons I have outlined or for other reasons. But if the General Assembly still considers judicial confirmation of non-judicial foreclosure sales to be necessary to protect borrowers, or even only residential borrowers, it should avoid any uncertainty by amending the Code to distinctly allow, prohibit, or regulate contractual waivers of the confirmation requirement of OCGA § 44-14-161. With this concern noted, I join the Court's opinion.

I am authorized to state that Justice Blackwell joins in this concurrence.

DECIDED APRIL 4, 2016.

*Carlton Fields Jorden Burt, Walter H. Bush, Jr., Francisco X. Balderas, Christopher B. Freeman*, for appellant.
*Andersen, Tate & Carr, Elizabeth L. Clack-Freeman, Robert M. Reeves, Robert D. Thomas*, for appellees.

*Bryan Cave, Curtis J. Romig, Edwin M. Cook, Leah F. McNeill; Schreeder, Wheeler & Flint, John A. Christy, Scott D. McAlpine; Wilson Brock & Irby, Kyler L. Wise; Bruce M. Edenfield; Vaughn & Clements, Jesse L. Vaughn; Louis G. McBryan,* amici curiae.