**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 15, 2013**

# In the Court of Appeals of Georgia

A13A0047. HWA PROPERTIES, INC. et al. v. COMMUNITY & SOUTHERN BANK.

ELLINGTON, Chief Judge.

HWA Properties, Inc. ("HWA") and Harry Albright (collectively, "the appellants") appeal from an order of the Superior Court of Fulton County granting summary judgment to Community & Southern Bank ("CSB") and awarding the bank a judgment on its suit to collect on a note and a guaranty. The appellants contend that the trial court erred in ruling in favor of CSB, arguing that CSB failed to prove that it was entitled to enforce the note or the guaranty. They also assert that the court erred in awarding CSB a "deficiency judgment" for the difference between the amount due on the note and the proceeds of the nonjudicial foreclosure sale of certain collateral, arguing that this Court recently reversed a separate order confirming the foreclosure

sale. For the following reasons, we affirm the court's order as to Albright's liability on his unconditional personal guaranty of the note, but reverse as to HWA's liability for a deficiency judgment on the note.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant." (Citations and punctuation omitted.) *White v. Ga. Power Co.*, 265 Ga. App. 664, 664-665 (595 SE2d 353) (2004).

Viewed in this light, the record shows the following undisputed facts. In June 2008, HWA and Appalachian Community Bank executed a note for approximately $4 million. The note was secured by about 188 acres of real property in Fannin County, as well as a contemporaneous, unconditional, personal guaranty executed by Albright. In October 2008, HWA renewed the note for a smaller principal balance of approximately $2.7 million. The renewed note matured on October 24, 2009, but HWA defaulted on the entire principal balance.

In February 2010, Appalachian Community Bank sued HWA on the note and Albright on his guaranty in Fulton County. In May 2010, Appalachian Community Bank filed a motion to substitute CSB as the party plaintiff, attaching a March 19,

2

2010 Gilmer County consent order appointing the Federal Deposit Insurance Corporation ("FDIC") receiver of the former bank's business and property, as well as the purchase and assumption agreement of the former bank by CSB, executed the same day. The appellants did not object to the motion or challenge the supporting documents on the basis that they constituted hearsay or were not authenticated. The trial court granted the motion and substituted CSB as the "real party plaintiff in interest" in this action, based upon its finding that CSB was "the successor in interest to the Federal Deposit Insurance Corporation as receiver for Appalachian Community Bank[.]"[1]

Over the next 16 months, the appellants did not move to set aside the substitution order. Then, in September 2011,[2] they filed a joint answer to the suit, admitting, inter alia, that Albright had executed the renewed note on behalf of HWA and his personal guaranty, that the principal amount of the note was $2,683,534, and

[1] See OCGA § 9-11-25 (c) ("In case of any transfer of interest, the action may be continued by or against the original party unless the court, upon motion, directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.").

[2] Between July 2010 and July 2011, the parties agreed to at least ten stipulations extending the time for the appellants to answer or otherwise respond to the suit on the note and guaranty.

that HWA had defaulted on the note. The appellants challenged CSB's right to collect on the note, however, asserting that CSB was not the payee on the note nor the named beneficiary of the guaranty.

On November 1, 2011, while the suit on the note was pending in Fulton County, CSB conducted a nonjudicial foreclosure sale of the Fannin County real property that had secured the note, and the property was sold for $1.59 million. Following a hearing on the confirmation petition filed by CSB, the Superior Court of Fannin County entered a foreclosure confirmation order on March 28, 2012.[3] The appellants appealed the order the same day (hereinafter, "the confirmation appeal"), contending that the Fannin County court improperly relied on inadmissible hearsay in finding that the foreclosure sale brought the fair market value of the property. See *HWA Properties v. Community & Southern Bank*, 320 Ga. App. 334 (739 SE2d 770) (2013). Despite their earlier claim that CSB was not the payee on the note, however,

---

[3] See OCGA § 44-14-161 (a) (requiring confirmation and approval of a nonjudicial foreclosure sale before the party conducting the sale can pursue a deficiency judgment against the debtor); (b) (before confirming the sale, the court must find that the evidence proved that the sale brought the true market value of the property); (c) (before confirming the sale, the court must find that the evidence proved the legality of the notice and advertisement and the regularity of the sale).

4

the appellants never sought to set aside the foreclosure sale of the property that had secured the note, nor did they file suit against CSB for wrongful foreclosure.

While the confirmation appeal was pending in this Court, CSB moved for summary judgment in the Fulton County suit on the note and the guaranty, asserting that it was entitled to a judgment for the difference between the amount due on the note and the proceeds of the foreclosure sale. According to CSB, after it applied the foreclosure proceeds to the outstanding balance on the note, the remaining principal balance was approximately $1.09 million, plus interest on the note, fees and other expenses. In response to the summary judgment motion, the appellants filed a motion to stay the trial court's consideration of CSB's motion until this Court issued a ruling in the confirmation appeal.

On June 7, 2012, the Fulton County trial court entered an order in which it denied the appellants' motion to stay the proceedings pending the confirmation appeal. It also granted CSB's motion for summary judgment, reasserting its earlier conclusion that CSB was the real party plaintiff in interest in this action. Further, because it was undisputed that Albright had executed the $2.7 million renewed note on behalf of HWA, that he had executed his unconditional personal guaranty of the note, and that HWA had defaulted on the note, the court awarded CSB a judgment for

the amount of the difference between the proceeds of the foreclosure sale and the total amount of principal due on the note. According to the court, the difference at that time was $1,093,534.38 in principal, plus interest on the note, late fees, expenses, and attorney fees. The appellants timely appealed the summary judgment order (hereinafter, "the instant appeal").

Then, on March 13, 2013, while the instant appeal was pending, this Court issued a ruling in the confirmation appeal in which we reversed the confirmation order based upon our conclusion that the Fannin County trial court had improperly relied upon inadmissible hearsay and that there was insufficient competent evidence to support a finding that the foreclosure sale brought the fair market value of the property. *HWA Properties v. Community & Southern Bank*, 320 Ga. App. at 334. The appellants immediately filed a supplemental appellate brief in the instant appeal in which they asserted that, as a result of this Court's reversal of the Fannin County foreclosure confirmation order, the Fulton County trial court's order granting summary judgment in favor of CSB must also be reversed.

1. The appellants contend that the trial court erred in granting summary judgment to CSB without sufficient competent evidence that CSB was entitled to enforce the note or guaranty. Specifically, they argue that there was no evidence that

6

CSB was either a "holder" or "nonholder in possession of the instrument" under Georgia's Uniform Commercial Code, OCGA § 11-3-101 et seq. ("Commercial Code"). They also argue that the court erred in considering the "unsworn" purchase and assumption agreement between the FDIC and CSB that was attached to the motion to substitute CSB as the party plaintiff.

As an initial matter, the record shows that the Georgia Department of Banking and Finance (the "Department") took possession of Appalachian Community Bank in March 2010.[4] The Department filed a petition for the appointment of the FDIC as receiver of the business and property of Appalachian Community Bank, and the Superior Court of Gilmer County granted a consent order naming the FDIC as the receiver, pursuant to 12 USC § 1821.[5] On March 19, 2010, CSB acquired all of the

---

[4] See OCGA § 7-1-157 (a) ("The department in possession shall be vested with all the rights, powers, and duties of such financial institution; with the title or the right to possession of all property to which the financial institution has title or the right to possession, including debts due, and liens and other security therefor; and with the financial institution's rights of action or redemption. This shall be so whether such property and debts due, such liens or other security therefor, or such rights of action or redemption are held in the name of such financial institution or in the name of some other corporation or person."); (c) ("The department is authorized to collect all moneys due to the financial institution and to do such other acts as are necessary to conserve its assets and business.").

[5] See 12 USC § 1821 (c) (appointment of FDIC as receiver of an insured depository institution); see also 12 USC § 1821 (d) (2) (A) ("The Corporation shall,

7

assets of Appalachian Community Bank from the FDIC. The record includes copies

of the consent order and the purchase and acquisition agreement, as well as copies of

the note and guaranty at issue in this case.

(a) Turning to the appellants' arguments on appeal, the record shows that the

appellants failed to raise any issue about CSB's status as a holder or nonholder in

possession of the note and guaranty under the Commercial Code, or to even refer to

any statutes within the Code, in the court below. Further, the appellants failed to

object to the court's consideration of either the consent order naming FDIC as the

receiver or the purchase and assumption agreement on the basis that they were

unsworn documents, constituted hearsay, or were otherwise not authenticated.

Because the appellants failed to raise and elicit rulings on these issues in the trial

as conservator or receiver, and by operation of law, succeed to-- (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; and (ii) title to the books, records, and assets of any previous conservator or other legal custodian of such institution."); (d) (2) (B) ("The Corporation may (subject to the provisions of section 40 [12 USC § 1831q]), as conservator or receiver-- (i) take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution; (ii) collect all obligations and money due the institution; (iii) perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver; and (iv) preserve and conserve the assets and property of such institution.").

8

court, these issues have been waived. See *West v. State*, 300 Ga. App. 583, 585 (2) (685 SE2d 486) (2009) ("Issues and objections not raised in the trial court and ruled on by the trial court are deemed waived and cannot be raised for the first time on appeal.") (footnote omitted).

(b) Further, even though the appellants would have been entitled to a judgment instanter in the suit if they were able to obtain a ruling that CSB was *not* the real party in interest in the suit, they did not object or respond to the motion to substitute CSB as the real party in interest, pursuant to OCGA § 9-11-25 (c),[6] nor did they move to set aside the trial court's order granting that motion. In fact, the appellants waited 16 months before first raising the issue of CSB's standing in their answer to the complaint. In addition, the appellants did not seek an interlocutory appeal from the substitution order, nor did they object to CSB's foreclosure of the property securing the note or its application of the foreclosure proceeds to their indebtedness while the instant suit was pending.

Thus, pretermitting whether the appellants are correct in asserting that the trial court's substitution of CSB as the real party in interest, pursuant to OCGA § 9-11-25 (c), was simply an administrative procedure and not a binding substantive

---

[6] See Footnote 1, supra.

9

determination that CSB was, in fact, the holder of the note and guaranty,[7] their failure to timely challenge the substitution order or the actions CSB took in reliance on that order supports a finding that they acquiesced to the substitution of CSB as the real party in interest. It is axiomatic that a party cannot simply sit on its hands and acquiesce in the trial court's procedural decisions and then complain about such decisions later. *Davis v. Phoebe Putney Health System*, 280 Ga. App. 505, 506 (1) (634 SE2d 452) (2006).

(c) The appellants also contend that CSB failed to present any evidence to show that, when it (CSB) purchased the assets of Appalachian Community Bank, it acquired the *specific* note and guaranty at issue in this case. They argue that, because the purchase and acquisition agreement in the record does not specifically identify the note and guaranty at issue here among the assets that CSB acquired in the transaction, the note and guaranty may not have been transferred to CSB but, instead, may have

---

[7] See *Goodyear v. Trust Co. Bank*, 248 Ga. 407, 408 (284 SE2d 6) (1981) (The Supreme Court ruled that the plaintiff's claims, which were based upon its status as a landowner, did not survive its transfer of its interest in the property to a third party. As a result, the plaintiff lacked standing to maintain its claims, because OCGA § 9-11-25 (c) "does not determine what actions shall survive the transfer of interest by a party; it deals only with the mechanics of substitution in an action which *does* survive under the applicable substantive law.") (citation, punctuation and footnote omitted; emphasis in original).

10

been transferred by Appalachian Community Bank to a different entity before CSB acquired its assets.

However, when Appalachian Community Bank sued the appellants to collect on the note and guaranty in February 2010, the appellants did not challenge its standing to do so. And, when the FDIC was appointed the receiver in March 2010, it succeeded to all of the rights and titles to the books, records, and assets of the bank, pursuant to 12 USC § 1821 (d) (2) (A).[8] Further, on the cover of the March 19, 2010 purchase and assumption agreement between the FDIC and CSB, the phrases "*WHOLE BANK*" and "*ALL DEPOSITS*" were printed in bold, capital letters. (Emphasis in original.)

Moreover, the affidavit of an officer of CSB's Special Assets Department states that CSB is "*the successor in interest* to the [FDIC] as receiver for Appalachian Community Bank," that he has "personal knowledge of the account of [HWA] and the business records of Appalachian Community Bank and CSB," that the copies of the note and guaranty that are attached to the affidavit are "true and correct" copies of the documents at issue and "are business records of Appalachian Community Bank

---

[8] See Footnote 5, supra.

and CSB"; and that the "*originals [of the documents are] in the possession of Appalachian Community Bank and CSB.*"[9] (Emphasis supplied.)

Given this affirmative and uncontradicted evidence of CSB's acquisition and *actual possession* of the note and guaranty at issue here, the appellants' unsupported assertion that the CSB may not have acquired the note and guaranty when it acquired Appalachian Community Bank's assets constitutes mere speculation or conjecture that is insufficient to defeat CSB's motion for summary judgment. See OCGA § 9-11-56 (e) (When a party moves for summary judgment and supports his or her motion by submitting affidavits, depositions, or answers to interrogatories, the opposing party "may not rest upon the mere allegations or denials of his pleading, but his response,

---

[9] As the trial court properly concluded, the affidavit of the officer of CSB's Special Assets Department provided a sufficient foundation to authorize the admission of the note and guaranty under the business records exception to the hearsay rule. See *Ross v. State*, 298 Ga. App. 525, 527 (680 SE2d 435) (2009) ("It is well established that a factual document may be admitted under the business records exception when an officer or employee of a business that *received, relied upon, and retained* the document in the regular course of its business testifies to that effect, despite the lack of testimony from a witness associated with the business that originally *created* the document.") (footnote omitted; emphasis in original).

Further, to the extent that the appellants attack the relevance or legal significance of this affidavit on appeal, such objections will not be entertained for the first time on appeal where the trial court considered the affidavit, without objection, in ruling on a motion for summary judgment. *Worth v. First Nat. Bank*, 175 Ga. App. 297, 298 (3) (333 SE2d 173) (1985).

12

by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."); *Isbell v. Credit Nation Lending Svc.*, 319 Ga. App. 19, 25 (2) (a) (ii) (735 SE2d 46) (2012) ("Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment.") (citation and punctuation omitted); *Mimick Motor Co. v. Moore*, 248 Ga. App. 297, 299 (1) (b) (546 SE2d 533) (2001) ("Bare conclusions and contentions unsupported by an evidentiary basis in fact are insufficient to oppose a motion for summary judgment.") (citation omitted).

(d) Finally, it is undisputed that both the original $4.1 million note and the $2.7 million renewed note identify the "Lender" as Appalachian Community Bank and "its successors and assigns." Similarly, the guaranty identifies the "Lender" as Appalachian Community Bank and its "participants, successors and assigns," and it states that it is binding upon Albright and "shall inure to the benefit of Lender and its participants, successors and assigns."

13

Accordingly, given the evidence presented, we find no error in the trial court's conclusion that CSB was the real party in interest with standing to enforce the note and guaranty in the instant suit.

2. The appellants contend that, because this Court reversed the Fannin County foreclosure confirmation order, we must likewise reverse the Fulton County court's order granting summary judgment to CSB in the instant suit on the note and guaranty. Specifically, they argue that, because CSB's foreclosure sale of the property securing the note was not validly confirmed, CSB was not entitled to a "deficiency judgment" against them, pursuant to OCGA § 44-14-161 (a).[10] They contend that, as a result, the court was not authorized to award CSB a judgment for the difference between the amount due on the note and the foreclosure sale price.

---

[10] See OCGA § 44-14-161 (a) ("When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.").

14

(a) We agree with the appellants that HWA can no longer be deemed liable for a deficiency judgment on the note due to this Court's reversal of the judicial confirmation of CSB's foreclosure sale of the real property that secured the note.

> A creditor who holds a promissory note secured by a deed is not put to an election of remedies as to whether he shall sue upon the note or exercise a power of sale contained in the deed, but he may do either, or pursue both remedies concurrently until the debt is satisfied. Although *concurrent pursuit* of both remedies is not barred, it is nevertheless clear that if it is the foreclosure remedy that is pursued to an *initial conclusion*, the creditor must then comply with OCGA § 44-14-161 so as to retain the right of *continued pursuit* of his remedy of obtaining a judgment against the debtor. . . . *Continuing* to pursue a lawsuit on a promissory note *after* the foreclosure proceedings have been concluded obviously constitutes "action" on the part of the creditor to obtain a *deficiency* judgment against the debtor [under OCGA § 44-14-161 (a)].

(Citations and punctuation omitted; emphasis in original.) *Vaughan v. Moore*, 202 Ga. App. 592, 592-593 (415 SE2d 47) (1992) (physical precedent only).

Thus, because CSB did not obtain a judgment on the note against HWA *prior* to the foreclosure sale, it was required to comply with the confirmation requirements of OCGA § 44-14-161 in order to obtain a deficiency judgment on the note. See id. at 593. Because this Court has reversed the confirmation order obtained by CSB after

15

finding that it was unsupported by sufficient evidence and, thus, void ab initio, it necessarily follows that CSB is estopped from obtaining a deficiency judgment against HWA, and the trial court's order as to HWA's liability on the note must be reversed. Id.[11]

(b) The trial court did not err, however, in granting summary judgment to CSB against Albright, whose liability on the note is based upon his unconditional personal guaranty.[12] The guaranty states, in relevant part, as follows:

> 1. No act or thing need occur to establish the liability of [Albright], and *no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate [Albright] or modify, reduce, limit or release the liability of [Albright]. . . .*

---

[11] We note that it is possible that the Fannin County court will allow CSB to conduct a resale of the property and to obtain a confirmation of that sale. See OCGA § 44-14-161 (c) (If the evidence is insufficient for the trial court to find that the foreclosure sale was conducted properly and brought the property's fair market value, the court may deny the confirmation petition, and it "may order a resale of the property for good cause shown."). However, the potential effect of such resale and confirmation on HWA's liability on the note in the instant suit and the Fulton County court's order thereon is not before us in this appeal.

[12] "A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed." (Punctuation and footnote omitted.) *Alston & Bird LLP v. Mellon Ventures II*, 307 Ga. App. 640 (706 SE2d 652) (2010).

4. The liability of [Albright] shall be limited to a principal amount of $ *Unlimited* (if unlimited or if no amount is stated, [Albright] shall be liable for all indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of [Albright]. *The Lender*[13] *may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except [Albright]), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of [Albright]. . . .*

6. . . . The liability of [Albright] shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by [Albright]): (i) *any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness*; . . . (iii) *any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower,* any delay or lack of diligence in the enforcement of Indebtedness, or *any failure to* institute proceedings, file a claim, give any required notices or otherwise *protect any Indebtedness*; (iv) *any full or partial release of, settlement with, or agreement not to sue, Borrower or any other*

---

[13] As noted above, the guaranty identifies the "Lender" as Appalachian Community Bank and its "participants, successors and assigns," which includes CSB. See Division 1 (d), supra.

*guarantor or other person liable in respect of any Indebtedness*; (v) *any discharge of any evidence of Indebtedness* or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) *any failure* to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or *to protect, insure, or enforce any collateral security*; (vii) *any foreclosure or enforcement of any collateral security*[.] . . .

7. *[Albright] waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full.* Without limiting the generality of the foregoing, *[Albright] will not assert, plead or enforce against Lender any defense of waiver, release*, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or *unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against Lender to Borrower or any such other person*, whether or not on account of a related transaction. *[Albright] expressly agrees that [he] shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. [Albright] shall remain*

18

*obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged.*[14]

(Emphasis supplied.)

"A guarantor may consent in advance to a course of conduct which would otherwise result in his discharge, and this includes the waiver of defenses otherwise

_____

[14] In addition, the guaranty includes the following relevant provisions:

9. If any payment applied by Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason . . . , the Indebtedness to which such payment was applied shall for the purpose of this guaranty be deemed to have continued in existence, notwithstanding such application, and this guaranty shall be enforceable as to such indebtedness as fully as if such application had never been made.

10. [Albright] waives any claim, remedy or other right which [he] may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of [his] obligation under this guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any right to participate in any claim or remedy [he] may have against the Borrower, collateral, or other party obligated for Borrower's debts, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

available to a guarantor." (Citation omitted.) *Baby Days v. Bank of Adairsville*, 218 Ga. App. 752, 755 (3) (463 SE2d 171) (1995). Here, Albright's personal guaranty includes an express and comprehensive waiver of any and all defenses to his liability on the entire balance due on the note. Further, even absent this broad waiver of defenses, the guaranty expressly gives Albright's consent for the "Lender" to collect on other collateral and to apply the proceeds to the amount due on the note and that "*[s]uch application of receipts shall not reduce, affect or impair the liability of [Albright]*." (Emphasis supplied.) In fact, the guaranty specifically provides that Albright shall remain liable for any deficiency remaining after the foreclosure of any property securing the note, "*whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. [Albright] shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged*." (Emphasis supplied.)

Consequently, given these provisions, we conclude that CSB's failure to obtain a valid confirmation of the foreclosure sale, pursuant to OCGA § 44-14-161, does not impair its authority to collect the difference between the amount due on the note and the foreclosure sale proceeds from Albright based upon his personal guaranty. See

*Baby Days v. Bank of Adairsville*, 218 Ga. App. at 755 (3). It follows that the trial court did not err in granting summary judgment to CSB on its suit against Albright as a personal guarantor of the note.[15] Id.; see also *Gen. Motors Acceptance Corp. v. Newton*, 213 Ga. App. 405, 406-407 (444 SE2d 805) (1994) (The failure to confirm a nonjudicial foreclosure sale pursuant to a security deed does not prevent a creditor from seeking to enforce a contractual right to recover against additional security on the debt.); *Worth v. First Nat. Bank*, 175 Ga. App. 297, 297-298 (1) (333 SE2d 173) (1985) (accord).

*Judgment affirmed in part and reversed in part. Phipps, P. J., and Branch, J., concur.*

---

[15] Notably, the appellants did not address the guaranty's waiver of all defenses in their appellate briefs.