In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 12-3648

INLAND MORTGAGE CAPITAL CORPORATION,

*Plaintiff-Appellee,*

*v.*

CHIVAS RETAIL PARTNERS, LLC, *et al.*,

*Defendants-Appellants.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 6482 — **Milton I. Shadur**, *Judge.*

_____

ARGUED SEPTEMBER 26, 2013 — DECIDED JANUARY 29, 2014

_____

Before POSNER, MANION, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* Before us is the defendants' appeal in a diversity suit (governed by either Illinois or Georgia law, or maybe both, as we'll see) to enforce a written guaranty. The district court granted summary judgment in favor of the plaintiff and awarded $17 million in damages (we round off all dollar figures to the nearest million).

The plaintiff, Inland Mortgage Capital Corporation, which the parties call IMCC, in 2007 agreed to lend a company named Harbins Crossing TC $60 million to buy a tract of land in Georgia on which Harbins wanted to build a shopping center anchored by a Wal-Mart. In addition to the usual security provided by the borrower, including a mortgage on the tract of land, IMCC obtained from defendant Chivas Retail Partners, LLC, and others (also named as defendants, but to simplify our opinion we'll pretend that Chivas is the only one), a loan guaranty agreement. Chivas guaranteed "absolutely, unconditionally and irrevocably … the full, complete and punctual observance, payment, and performance and satisfaction of all of the obligations … of [Harbins] under the Loan Documents." Critically, the guaranty agreement also provided that "if Lender [that is, IMCC] forecloses on any real property collateral … the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, *even if the collateral is worth more than the sale price*; and Lender may collect from Guarantor [that is, Chivas] *even if Lender, by foreclosing on the real property collateral, has destroyed any rights Guarantor may have to collect from Borrower or anyone else*" (emphasis added). The agreement states that any dispute arising from it is to be resolved under Illinois law.

Fourteen months after the loan agreement was signed, Harbins defaulted (apparently because Wal-Mart decided not to open a store in the proposed shopping center). Thirteen months later IMCC foreclosed on its mortgage. The foreclosure proceeding was nonjudicial; the mortgaged land was auctioned off at a public foreclosure auction conducted by the local sheriff after public notice of the auction. IMCC made a credit bid (that is, a bid financed by money owed it

as a creditor, rather than a cash bid) for $7 million. That was the only bid, so IMCC became the owner of the land.

IMCC then filed in a Georgia court a petition to confirm that the auction had conformed to Georgia law. It did this because, unless such a petition is granted, a mortgagee who obtains property in a nonjudicial foreclosure sale can't obtain a deficiency judgment should the property turn out to be worth less than the balance owed him on the mortgage. Ga. Code § 44-14-161(a). And the court "shall not confirm the sale [i.e., grant the petition] unless it is satisfied that the property so sold brought its true market value on such foreclosure sale." § 44-14-161(b); see *American Century Mortgage Investors v. Strickland*, 227 S.E.2d 460, 462 (Ga. App. 1976); *Thompson v. Maslia*, 195 S.E.2d 238, 241–42 (Ga. App. 1972); *Walton Motor Sales, Inc. v. Ross*, 736 F.2d 1449, 1455 (11th Cir. 1984); *Surety Managers, Inc. v. Stanford*, 633 F.2d 709, 710–11 (5th Cir. Unit B 1980).

At the close of a one-day evidentiary hearing, the court in which IMCC had filed its petition denied confirmation on the ground that IMCC had not satisfied statutory requirements. No further explanation was offered but the parties agree that the reason for the denial was that the court thought the land worth more than $7 million. IMCC appealed, but the appellate court affirmed without an opinion.

So IMCC decided to invoke the guaranty agreement, and when Chivas refused to honor it brought the present suit for the difference between what it had paid for the land in the foreclosure sale ($7 million, by writing off that amount of Harbins's debt to it in exchange for acquiring the land) and the unpaid balance of the debt, including taxes, penalties, and interest, totaling $24 million—hence $17 million, the

amount the district court in Chicago, where the suit was brought, awarded.

The Georgia statute, a bit of Southern populism left over from the 1930s depression—the statute was enacted in 1935 and has not been materially changed since; see *Thompson v. Maslia*, *supra*, 195 S.E.2d at 241–42; *Davie v. Sheffield*, 180 S.E.2d 263, 264 (Ga. App. 1971)—is odd by modern standards in extinguishing the mortgagee's right to any deficiency judgment whatsoever no matter how slight the underpayment for the land. (A bill to inter this legislative fossil is languishing in the Georgia legislature. See Ga. S.B. 106, 152d General Assembly (2013–2014 Regular Session).) One might think that if the land that IMCC acquired was worth $8 million rather than $7 million, the deficiency judgment to which it would be entitled would be $16 million rather than $17 million—not zero. But zero is the answer that Georgia gives in such a case. *Powers v. Wren*, 31 S.E.2d 713, 716–17 (Ga. 1944); *Turpin v. North American Acceptance Corp.*, 166 S.E.2d 588, 592 (Ga. App. 1969); Craig Pendergrast & Sara LeClerc, "Georgia Foreclosure Confirmation Proceedings in Today's Recessionary Real Estate World," 16 *Ga. Bar J.*, No. 4, Dec. 2010, at 11, 14. Otherwise the failure of the Georgia courts in this case to venture any estimate of the value of the land in question would be inexplicable.

Chivas argues that the $17 million awarded IMCC by the federal district court in Chicago is a deficiency judgment, and that the Georgia courts have determined that because the land is worth more than $7 million IMCC is not entitled to a deficiency judgment. But IMCC is not seeking a deficiency judgment. Such a judgment is sought against a borrower, usually and in this case a mortgagor. The borrower,

the mortgagor, is Harbins. Harbins is not a defendant in this suit; Chivas, the guarantor, is. By virtue of the Georgia judgment, IMCC can't obtain a deficiency judgment, which is to say can't sue Harbins for the balance of Harbins's debt to it. But there is nothing to prevent it from suing the guarantor. "Failure to obtain confirmation of a sale does not operate to extinguish the remaining debt" and thus "does not estop a creditor from pursuing other contractual security on the debt." *Taylor v. Thompson*, 282 S.E.2d 157, 158 (Ga. App. 1981); see also cases cited in that opinion and *HWA Properties, Inc. v. Community & Southern Bank*, 746 S.E.2d 609, 615–16 (Ga. App. 2013). The purpose of a loan guaranty is to make the lender whole if the borrower is unable to repay the loan in full. The fact that the Georgia courts have prevented IMCC from obtaining full repayment by its debtor (the borrower) is what triggered Chivas's liability to IMCC as guarantor of the debt.

Chivas argues that the district court's award of damages gives IMCC a windfall. The Georgia courts have determined that the land is worth more than $7 million. Suppose it's worth $10 million. Then the award of damages will result in IMCC's recovering a total of $27 million ($10 million + $17 million) when it's actually owed only $24 million. Of course all we know is that the land is worth (or so at least the Georgia courts have ruled) more than $7 million. We don't know how much more. There is no evidence of the land's value in the record. It could be only $7,000,001. Chivas could have offered evidence of the actual value of the land in the district court, but it didn't. Actually that would have been a waste of everyone's time. For remember that the guaranty agreement guarantees IMCC the difference between what it pays for the land and the unpaid balance of the loan to Harbins, even if

the land is worth more than what IMCC paid for it. The guaranty agreement couldn't be clearer. Nor is there any argument that the agreement is unconscionable or otherwise unlawful, even though it indeed has built into it the possibility of a windfall. Chivas concedes that if IMCC had sued it to enforce the guaranty without first seeking confirmation in Georgia, it would have no defense; the guaranty agreement is lawful under Georgia law as well as Illinois law, *HWA Properties, Inc. v. Community & Southern Bank*, *supra*, 746 S.E.2d at 617; *Taylor v. Thompson*, *supra*, 282 S.E.2d at 158, though remember that the agreement states that disputes arising under it are to be resolved in accordance with Illinois law.

Chivas argues that IMCC should be collaterally estopped to sue it, for the unpaid balance of the loan to Harbins, by the judgment of the Georgia courts that barred it from seeking a deficiency judgment. But that repeats the argument, in another guise, that the suit against Chivas seeks a deficiency judgment. It doesn't. Chivas can plead collateral estoppel successfully only on the issue actually litigated in and decided by the Georgia courts in the confirmation action: namely whether the property is worth more than $7 million. See *Alexander v. Weems*, 277 S.E.2d 793, 794 (Ga. App. 1981); *Walton Motor Sales, Inc. v. Ross*, *supra*, 736 F.2d at 1455. But IMCC's suit is based on the guaranty, not on the confirmation; and in that suit the value of the land, as distinct from what IMCC paid for it, is irrelevant.

Chivas's defense if accepted would incite the beneficiary of a guaranty to sue the guarantor first, rather than the debtor, because if the beneficiary lost a suit against a debtor the guaranty would (were Chivas's defense accepted) be down

the drain. To avoid that risk the creditor would bypass the debtor and sue the guarantor. Guaranties would no longer back up creditors; instead they would give debtors a free pass.

What a topsy-turvy world the defense rightly rejected by the district court would create!

AFFIRMED.