In the Supreme Court of Georgia

Decided: February 22, 2016

S15Q1445. PNC BANK, NATIONAL ASSOCIATION v. SMITH et al.

MELTON, Justice.

In this case regarding the requirements of Georgia's foreclosure confirmation statute, OCGA § 44-14-161,[1] the United States District Court for the Northern District of Georgia has certified two questions: (1) Is a lender's compliance with the requirements contained in OCGA § 44-14-161 a condition precedent to the lender's ability to pursue a borrower and/or guarantor for a deficiency after a foreclosure has been conducted? (2) If so, can borrowers or

---

[1] This statute provides:
When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.
OCGA § 44-14-161 (a).

guarantors waive the condition precedent requirement of such statute by virtue of waiver clauses in the loan documents? For the reasons set forth below, with regard to guarantors, we answer both questions affirmatively.[2]

1. In relevant part, the record shows that PNC Bank, National Association holds a promissory note on certain commercial property in Jackson County, Georgia. The note is related to an original loan dated May 6, 2004, and a deed to secure debt and security agreement encumbering the property. The borrower of the loan is Hoschton Towne Center, LLC, which is not a party to the current action. Kenneth D. Smith, William R. Dooley, Terry W. Dooley, Robert McNaughton, Chris Dooley, Timothy R. Sterritt, and New South Vision Properties, LLC guaranteed the original loan and its subsequent modifications.[3] The deed to secure debt gives PNC the right to exercise the power of sale in case of default, and PNC may also pursue other collateral, including "contracts of

[2] The parties concede and the record confirms that there are no borrowers involved in the present lawsuit, only guarantors. Therefore, we do not reach the issue of a borrower's rights in the present matter, as it would result in an advisory opinion. We note, however, that the parties agree that a confirmation is necessary to pursue a deficiency judgment against a borrower.

[3] From 2005 to 2008, four modifications were made to the original loan, primarily consisting of changes to the principal amount due on the loan as well as the maturity dates of the note.

guaranty." Finally, the deed to secure debt grants PNC the right to exhaust its remedies "either concurrently or independently, and in such order as [PNC] may determine."

In the separate guaranties, each of the guarantors pledged to remain unconditionally liable on the indebtedness, irrespective of Hoschton's own liability or ultimate discharge. In addition, the guarantors waived their legal and equitable defenses, other than payment of the indebtedness. The guarantors waived "any and all rights or defenses . . . based on any 'one action' or 'antideficiency' law or any law which prevents [PNC] from bringing any action, including claim for deficiency against [the guarantors], before or after [PNC's] completion of any foreclosure action. . . ." The guarantors also acknowledged PNC's right of foreclosure and agreed to remain liable for the indebtedness even if post-foreclosure confirmation did not occur.

On April 18, 2013, following the Hoschton's default, PNC sent Hoschton and all of the guarantors notice of its intent to accelerate the maturity of the note and to declare the entire unpaid principal and interest then due immediately due and payable. On June 28, 2013, PNC conveyed notice of its intent to foreclose, and the property was subsequently disposed of at a foreclosure sale. Ultimately,

PNC chose not to obtain confirmation of this sale pursuant to OCGA § 44-14-161. Thereafter, PNC filed the present action against the guarantors for a deficiency, claiming that they have waived any and all defenses to this action which seeks all principal, interest, late charges, and costs arising from the alleged default.

2. The first question we have been asked to answer is whether a lender's compliance with the requirements contained in OCGA § 44-14-161 is a condition precedent to the lender's ability to pursue a guarantor for a deficiency after a foreclosure has been conducted. We find that such compliance is required.

In First Nat. Bank & Trust Co. v. Kunes, 230 Ga. 888, 890-891 (199 SE2d 776) (1973), we considered the question of whether two individuals who acted as sureties were entitled to notification prior to foreclosure confirmation proceedings. We summarized:

> We . . . hold that [the sureties] were "debtors" within the meaning of [OCGA § 44-14-161 (c)] immediately upon the default on the promissory notes and as such should have received notice of the confirmation proceedings and given an opportunity to contest the approval of the sales before claims for the balance of the indebtedness could be prosecuted against them.

4

Id. at 889-891.[4] Kunes goes on to state that, even if the sureties in that matter had been only guarantors, "it was necessary that these parties be properly notified of the confirmation proceedings, irrespective of whether these separate undertakings, were agreement of surety or guaranty." Id. We reasoned that notice to both sureties and guarantors was necessary to satisfy the purpose of the confirmation statute– "to limit and abate deficiency judgments in suits and foreclosure proceedings on debts." Id.

> Based upon this reasoning, it would not matter for purposes of this statute whether the debtors were primarily or secondarily liable on the debt as they would still have to be notified of the confirmation proceedings to be held accountable for the deficiency, or balance due on the indebtedness.

Id. Our conclusion was also supported by the expansive definition of "debtor" in what is now OCGA § 18-21-1 ("Whenever one person, by contract or by law, is liable and bound to pay to another an amount of money, certain or uncertain, the relation of debtor and creditor exists between them.") PNC's argument that

---

[4] OCGA § 44-14-161 (c) provides: "The court shall direct that a notice of the hearing shall be given to the debtor at least five days prior thereto; and at the hearing the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale. The court may order a resale of the property for good cause shown."

Kunes stands only for the proposition that guarantors must receive notice of a confirmation proceeding is untenable. There would be no need to extend notice to guarantors as "debtors" under OCGA § 44-14-161 (c) if they were not entitled to some right as "debtors" under OCGA § 44-14-161 (a). Indeed, in Kunes, we pointed out that notice was required to enable sureties and guarantors "an opportunity to contest the approval of the [foreclosure] sales." Id.

3. The second question we have been asked to answer is whether a guarantor can waive the condition precedent requirement of the confirmation statute by virtue of waiver clauses in the loan documents. Guarantors may waive the condition precedent.

The Georgia Court of Appeals has considered this issue on at least two occasions. In HWA Properties, Inc. v. Community & Southern Bank, 322 Ga. App. 877, 887 (2) (b) (746 SE2d 609) (2013), the Court of Appeals observed that a "guarantor may consent in advance to a course of conduct which would otherwise result in his discharge, and this includes the waiver of defenses otherwise available to a guarantor." (Citation and punctuation omitted.) The Court of Appeals then analyzed the guaranty at issue in that case, noting that it expressly: (1) waived all defenses to liability on the entire balance due on the

6

note; (2) gave consent for the lender to collect other collateral and apply the proceeds to the amount due on the note; (3) agreed that the collection of other collateral would not reduce, affect, or impair the guarantor's liability; and (4) agreed that the guarantor would remain liable for any deficiency even after foreclosure of the property and release of the borrower. The Court of Appeals then reasoned:

> [G]iven these provisions, we conclude [the lender's] failure to obtain a valid confirmation of the foreclosure sale, pursuant to OCGA § 44–14–161, does not impair its authority to collect the difference between the amount due on the note and the foreclosure sale proceeds from [the guarantor] based upon his personal guaranty. See Baby Days v. Bank of Adairsville, 218 Ga. App. [752, 755 (3) (463 SE2d 171) (1995)]. It follows that the trial court did not err in granting summary judgment to [the lender] on its suit against [the guarantor] as a personal guarantor of the note. Id.; see also Gen. Motors Acceptance Corp. v. Newton, 213 Ga. App. 405, 406–407 (444 SE2d 805) (1994) (The failure to confirm a nonjudicial foreclosure sale pursuant to a security deed does not prevent a creditor from seeking to enforce a contractual right to recover against additional security on the debt.); Worth v. First Nat. Bank, 175 Ga. App. 297, 297–298 (1) (333 SE2d 173) (1985) (accord).

(Footnote omitted.) HWA Properties, supra, 322 Ga. App. 887 (2) (b). The Court of Appeals reached the same result in Community & Southern Bank v. DCB Investments, LLC, 328 Ga. App. 605 (760 SE2d 210) (2014). Again, the

7

Court of Appeals found that the guarantor waived any rights under the confirmation statute based on explicit language in the guaranty agreement. In doing so, the the Court of Appeals noted that the result is in line with the fundamental principle that the freedom of contract is sacrosanct, and that freedom should not be limited absent some important public policy reason. Id. at 610 (2). We agree. This result creates an appropriate balance between the statutory protections of the confirmation statute and the freedom of a guarantor to enter contracts deemed beneficial. See, e.g., Redman Industries v. Tower Properties, 517 FSupp 144 (N.D. Ga. 1981).

Therefore, for all of the reasons set forth above, we find that a lender's compliance with the requirements contained in OCGA § 44-14-161 is a condition precedent to the lender's ability to pursue a guarantor for a deficiency after a foreclosure has been conducted, but a guarantor retains the contractual ability to waive the condition precedent requirement.

Questions answered. All the Justices concur.

S15Q1445. PNC BANK, NATIONAL ASSOCIATION v. SMITH et al.

NAHMIAS, Justice, concurring.

I join the Court's opinion in full, as it properly applies current Georgia law in answering the two questions presented. But I write to express concern about where today's decision may lead.

As the Court explains, our opinion in First National Bank & Trust Co. v. Kunes, 230 Ga. 888 (199 SE2d 776) (1973), equated guarantors of loans secured by real estate with borrowers and their sureties under Georgia's 1935 foreclosure confirmation statute, which is now found at OCGA §§ 44-14-161 and -162. That holding was a reasonable interpretation of the statute, and in any event it is a four-decade-old statutory precedent that created a workable rule involving contract and property rights, and thus it should be followed as a matter of stare decisis. See Woodard v. State, 296 Ga. 803, 812 (771 SE2d 362) (2015) (discussing factors to consider in deciding whether to apply stare decisis); Savage v. State, 297 Ga. 627, 641 (774 SE2d 624) (2015) (explaining that "stare decisis is especially important where judicial decisions create substantial reliance interests, as is most common with rulings involving contract and

property rights"). Indeed, the detailed waiver provisions included in the guarantees suggest that the parties here, including PNC Bank, understood the law to require confirmation before deficiency actions against guarantors: there would be no need to so explicitly waive a defense that one believes does not exist.

I also agree with the Court's conclusion today that, under current law, a guarantor may, through clear and explicit contractual language, waive the confirmation protection afforded by OCGA § 44-14-161. Given Kunes's equation of guarantors, sureties, and borrowers, it would seem to follow that borrowers too may waive the protections the confirmation statute affords them.[1] And if that is the case, then it may well be – given the imbalance in bargaining power between most lenders and most borrowers – that before long, virtually every security deed in Georgia will include such a waiver, and the confirmation requirement of § 44-14-161 could become a dead letter. It may be that the General Assembly no longer considers judicial confirmation of non-judicial

---

[1]The Arizona courts have found a way to uphold waivers by guarantors of that state's statutory anti-deficiency protections, while prohibiting such waivers by borrowers. See Arizona Bank & Trust v. James R. Barrons Trust T-Group, LLC, 351 P3d 1099, 1102-1104 (Ariz. Ct. App. 2015). Arizona, however, did not have a precedent like Kunes equating guarantors and borrowers under its statute.

foreclosure sales necessary to protect borrowers from deficiency judgments, but if borrowers are to be so protected, the legislature should consider regulating or prohibiting such contractual waivers by borrowers (and perhaps guarantors as well).

In this respect, I note that such waivers are already statutorily prohibited for a similar notice requirement – the 30-day notice of a non-judicial foreclosure sale that must be given to debtors (who are defined for purposes of this provision to include original mortgagors and current owners, but not guarantors, see OCGA § 44-14-162.1) under OCGA § 44-14-162.2. See OCGA § 44-14-162.3 ("No waiver or release of the notice requirement of Code Section 44-14-162.2 shall be valid when made in or contemporaneously with the security instrument containing the power of nonjudicial foreclosure sale . . . ."). When this notice requirement was first enacted in 1981 as an amendment adding additional sections to the 1935 act that created the foreclosure confirmation process and its notice requirement, the no-waiver provision appears to have applied to *both* notice requirements. See Ga. L. 1981, p. 834, § 5 (b) ("No waiver or release of the notice requirement*s* of this *Act* shall be valid when made in or contemporaneously with the security instrument containing the power of

3

nonjudicial foreclosure sale . . . ." (emphasis added)).  When the Code was reorganized into the Official Code of Georgia Annotated the next year, however, the sections added in the 1981 amendment were re-codified as separate Code sections 44-14-162.1 to 44-14-162.4, with the no-waiver provision reworded to expressly apply *only* to the notice requirement in § 44-14-162.2.  It is not clear why that was done, or whether it was intended to alter the prior law.  See OCGA § 1-1-2.  But that is how the Code reads today, and if it is not changed, it may mean that the confirmation statute will soon, in practical effect, protect few if any Georgians.

As this Court said in <u>You v. JP Chase Morgan Bank, N.A.</u>, 293 Ga. 67 (743 SE2d 428) (2013):

> While we respect our legislature's effort to assist distressed homeowners by amending the non-judicial foreclosure statute in 2008, the continued ease with which foreclosures may proceed in this State gives us pause, in light of the grave consequences foreclosures pose for individuals, families, neighborhoods, and society in general.  Our concerns in this regard, however, do not entitle us to overstep our judicial role, and thus we leave to the members of our legislature, if they are so inclined, the task of undertaking additional reform.

Id. at 75.  With this concern noted, I join the Court's opinion.