**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 8, 2019**

# In the Court of Appeals of Georgia

A18A1467. APEX BANK v. THOMPSON et al.

A18A1468. THOMPSON et al. v. APEX BANK.

BROWN, Judge.

We have consolidated these interlocutory appeals arising from a trial court's order on cross-motions for summary judgment. In the underlying action, Apex Bank ("Apex") sued Ernest A. Thompson and Douglas O. Thompson (the "Thompsons") for a deficiency judgment following a non-judicial foreclosure sale of the real property collateralizing the loan, alleging that they were guarantors of the debt remaining on a promissory note. In Case No. A18A1467, Apex contends that the trial court erred by failing to grant summary judgment in its favor on the issue of the Thompsons' liability for the difference between the amount due on the note and the foreclosure proceeds based upon their alleged waiver of the requirements of the

confirmation statute, OCGA § 44-14-161. In Case No A18A1468, the Thompsons contend, in part, that the trial court erred by denying their cross-motion for summary judgment on the issue of liability based upon Apex's failure to comply with the requirement that it obtain confirmation of the sale under OCGA § 44-14-161 before filing suit for a deficiency judgment. For the reasons explained below, we affirm the trial court's denial of summary judgment in Apex's favor in Case No. A18A1467, and reverse the trial court's denial of summary judgment in favor of the Thompsons in Case No. A18A1468.

"On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party." (Citation and punctuation omitted.) *Seki v. Groupon, Inc.*, 333 Ga. App. 319 (775 SE2d 776) (2015). So viewed, the record shows that in November 2007, Direct Land & Development, LLC ("the LLC") executed a security deed in favor of the Bank of Valdosta that encumbered real property owned by the LLC in connection with a $208,000 promissory note. The security deed was signed by the Thompsons in their capacity as members of the LLC. Although a copy of the 2007 note is not a part of the record before us, the Thompsons state in their briefs that they were not a

2

party to this loan, either individually or as guarantors. In its appellate brief, Apex objects to this characterization of the facts in the Thompsons' brief, stating:

> Apex objects to the statement that the Thompsons were not individually parties to the original loan made when the security deed was executed November 8, 2007 (the "Security Deed"). (R. 12). The promissory note providing the underlying debt for the Security Deed when the original loan was made is not at issue in the lower court action, as it was replaced during a subsequent refinancing of the debt. The subject promissory note is dated October 26, 2011.

In October 2011, the LLC refinanced the 2007 note. The Thompsons "jointly and severally promise[ed] to pay" the lender,[1] and signed the new note in both their individual capacity and as members on behalf of the LLC. On the same day, the Thompsons signed, in their capacity as members on behalf of the LLC, a Modification of Security Deed which deleted the definition of note in the original security deed and replaced it with the new October 2011 note. Additionally, Douglas O. Thompson granted the lender a security interest in $14,393.09 placed in a certificate of deposit account through an "Assignment of Deposit Account." The

---

[1] Apex asserts that the Bank of Valdosta changed its name to Sunrise Bank on July 30, 2010. Sunrise Bank is listed as the lender in the 2011 and 2012 agreements signed by the Thompsons. The 2012 "Change in Terms Agreement" identifies the Bank of Valdosta "as predecessor to Sunrise Bank."

"Assignment of Deposit Account" states that it was "made and executed among Douglas O. Thompson ("Grantor"), [the LLC], Douglas O. Thompson and Ernest A. Thompson ("Borrower"); and Sunrise Bank ("Lender"). In December 2012, the Thompsons signed a "Change in Terms Agreement," in both their individual capacity and as members on behalf of the LLC, that extended the due date for payment of the loan an additional six months.

In 2013, the Federal Deposit Insurance Corporation, in its capacity as the receiver for Sunrise Bank, assigned the 2007 security deed to the Bank of Camden. In 2015, the Bank of Camden changed its name to Apex Bank. In December 2016, Apex foreclosed upon the property securing the loan and was the highest bidder at a non-judicial foreclosure sale with a bid in the amount of $118,900. It is undisputed that Apex Bank did not file for confirmation of the foreclosure sale within 30 days under the procedure provided by OCGA § 44-14-161.

In 2017, Apex filed a complaint against the Thompsons seeking a deficiency judgment. Based upon the Thompsons' alleged status as guarantors who waived their right to the protection provided by the confirmation statute in the 2011 and 2012 loan documents, Apex moved for summary judgment in its favor. The Thompsons filed a cross-motion for summary judgment asserting that they were debtors entitled to the

4

protection of the confirmation statute, that the 2011 and 2012 agreements do not include valid waivers of their rights under the statute, and that an alleged requirement for a separate guaranty agreement was not met. After both sides presented argument in a hearing, the trial court entered an order denying each of the pending motions for summary judgment without an explanation of its reasoning.

1. In Case No. A18A1467, Apex asserts that the trial court erred "by failing to rule that the contractual waiver language found in the Thompson[s'] loan documents was sufficient to waive the defense of compliance with the [c]onfirmation [s]tatute." See OCGA § 44-14-161 (a) ("no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings, shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon"). In Case No. A18A1468, the Thompsons contend the opposite – that the trial court should have granted their motion for summary judgment because the loan documents failed to include an adequate waiver of the confirmation process required by OCGA § 44-14-161. We agree with the Thompsons.

It is well-established that a lender cannot obtain a deficiency judgment against a guarantor without complying with the foreclosure confirmation requirements of OCGA § 44-14-161, *unless* the guarantor has waived its right to insist on compliance. See *York v. RES-GA LJY*, 300 Ga. 869, 872-873 (2) (799 SE2d 235) (2017); *PNC Bank v. Smith*, 298 Ga. 818, 822 (3) (a) (785 SE2d 505) (2016). In *HWA Properties v. Community & Southern Bank*, 322 Ga. App. 877 (746 SE2d 609) (2013), we outlined the following provisions in a guaranty agreement and concluded that "these provisions" showed a waiver of the guarantor's right to confirmation under OCGA § 44-14-161:

> [the] personal guaranty includes an express and comprehensive waiver of any and all defenses to [the guarantor's] liability on the entire balance due on the note. Further, even absent this broad waiver of defenses, the guaranty expressly gives [] consent for the "Lender" to collect on other collateral and to apply the proceeds to the amount due on the note and that "[s]uch application of receipts shall not reduce, affect or impair the liability of [the guarantor]." In fact, the guaranty specifically provides that [the guarantor] shall remain liable for any deficiency remaining after the foreclosure of any property securing the note,
>
> > *whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. [Guarantor] shall remain*

6

> *obligated, to the fullest extent permitted by law, to pay*
> *such amounts as though the Borrower's obligations had*
> *not been discharged.*

(Punctuation omitted; emphasis in original.) Id. at 887 (2) (b).

Relying upon *HWA Properties*, Apex Bank points to various language contained within the 2011 note, the 2011 agreement assigning the deposit account, and the 2012 change in terms agreement, all of which were signed by the Thompsons in their individual capacities, to support its claim of waiver. We will therefore examine each of these agreements in turn.

(a) *2011 Note*. Apex relies upon the following italicized language to support its claim of waiver in the 2011 Promissory Note :

> **GENERAL PROVISIONS**. This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, *Lender may with respect to any other Borrower* (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness,

7

including increases and decreases of the rate of interest on the indebtedness; (c) *exchange, enforce*, waive, subordinate, fail or decide not to perfect, and release *any security, with or without the substitution of new collateral*; (d) *apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine*; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. *Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability*. All such parties waive any right to require Lender to take action against any other party who signs this Note as provided in O.C.G.A. Section 10-7-24 and agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

(Bold in original; italics supplied.) We disagree.

Language providing that a change in the terms of the note will not *release* a party who has signed the note from liability unless it is expressly stated in writing is not and should not be construed as a *waiver* of a guarantor's right to insist upon compliance with the confirmation statute. Likewise, language regarding a lender's *right* to change the collateral and exercise *discretion* over which collateral it might foreclose upon first and how it chooses to apply the proceeds also fails to show a *waiver* of a guarantor's rights under the confirmation statute.

(b) *2011 Assignment of Deposit Account*. Apex contends that language in the "Assignment of Deposit Account" agreement, executed on the same day as the 2011 note, waived the Thompsons' rights under the confirmation statute. This agreement provides, in relevant part:

> **ASSIGNMENT**. For valuable consideration, Grantor assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit accounts described below, to secure the indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

> **COLLATERAL DESCRIPTION**. . . . In addition, the word "Collateral" includes all of the Grantor's property . . . in Lender's

9

possession . . . including without limitation . . . property to which Lender acquires title or documents of title. . . .

**CROSS-COLLATERALIZATION**. *In addition to the Note*, this Agreement *secures* all obligations, debts, and liabilities . . . of either Grantor or Borrower to Lender, or any one or more of them, as well as claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**BORROWER'S WAIVERS AND RESPONSIBILITIES**. *Except as otherwise required under this Agreement or by applicable law*, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) *Borrower waives any defenses that may arise because of any action or inaction of Lender*, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and *Borrower agrees*

10

*to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.*

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. . . .

> **Agreement.** The word "Agreement" means this Assignment of Deposit Account, as this Assignment of Deposit Account may be amended or modified from time to time, together with all exhibits and schedules attached to this Assignment of Deposit Account from Time to Time.

> **Grantor.** The word "Grantor" means Douglas O[.] Thompson. . . .

> **Note.** The word "Note" means the Note executed by Direct Land & Development LLC, Douglas O Thompson and Ernest A Thompson in the principal amount of $196,553.20 dated October 26, 2011, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

(Emphasis in italic supplied; emphasis in bold in original.)

While this document contains a specific waiver of defenses, we cannot say, after reading this document as a whole, that it includes a waiver of the Thompsons'

11

defenses under the confirmation statute. "Agreement" is clearly defined to mean only the "Assignment of Deposit Account," and the agreement of the Thompsons "to remain liable under the Note no matter what action Lender takes or fails to take under *this Agreement*" cannot be read to apply to Apex's failure to comply with the requirements of the confirmation statute. The collateral covered by this agreement applied only to the particular identified deposit account and other property owned by the Grantor, Douglas O. Thompson, in the possession of Apex. The foreclosed-upon property, on the other hand, was owned by the LLC, not Douglas O. Thompson.

Apex also points to some of the language in the "Cross-Collateralization" paragraph as evidence that the Thompsons waived their rights under the confirmation statute. We disagree as this paragraph provides, in essence, that no matter what eventuality might occur, the security interest provided by the agreement will not be affected. For example, Apex would still have the right to apply the deposit account (the security) to amounts owed under the note even if "the obligation to repay such amounts may hereafter become otherwise unenforceable."

The Thompsons' agreement to "waive *any* defenses that may arise because of *any* action or *inaction* of [Apex], including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral"

12

presents a closer question. (Emphasis supplied.) While this language could be broadly interpreted to apply to Apex's failure to seek confirmation of the foreclosure sale, we cannot ignore that it is included within an agreement providing that a deposit account with an approximate balance of $14,000 would provide additional collateral for the note. Accordingly, it could also be interpreted to mean that the Thompsons were only waiving defenses to enforcement of the collateral agreement, not defenses to a deficiency judgment based upon Apex's failure to seek confirmation of the foreclosure sale. The Thompsons correctly assert that a guaranty contract cannot be "extended by implication or interpretation," OCGA § 10-7-3, and must be strictly construed. *York*, supra, 300 Ga. at 871 (2). Based upon this well-established law, we decline to find that the language at issue waived the Thompsons' rights under the confirmation statute.

(c) *2012 Change in Terms Agreement.* Apex relies upon the following language in the "Change In Terms Agreement" to establish a waiver:

> **CONTINUING VALIDITY**. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the

obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). *It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.* Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**MISCELLANEOUS PROVISIONS**. . . . Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. . . . Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.

(Bold in original; italic supplied.)

These provisions also fail to establish a waiver. As we have previously stated, an agreement that a change in the terms of the note will not *release* a party who has

signed the note from liability unless it is expressly stated in writing is not and should not be construed as a *waiver* of a guarantor's rights or defenses under the confirmation statute. Likewise, the statement in the "Continuing Validity" paragraph about the *intent* of the Lender when executing an agreement to extend the maturity date of a loan an additional six months should not be construed as a *waiver* of a guarantor's *defenses* under the confirmation statute. Finally, the Lender's decision to delay or forgo "*its* rights or remedies under *this Agreement*" also fails to show a guarantor's *waiver* of defenses.

Having carefully examined all of the contractual provisions Apex claims established a waiver and finding that all of them fall short, we must reverse the trial court's denial of summary judgment in favor of the Thompsons and affirm its denial of summary judgment to Apex.

2. Based upon our holding in Division 1, we need not address the Thompsons' remaining claims. .

*Judgment affirmed in Case No. A18A1467. Judgment reversed in Case No. A18A1468. Miller, P. J., and Goss, J., concur.*